(No. 34794.—

THE SUPERVISORS OF THE COUNTY OF BOONE, Appellees, *vs.*
THE VILLAGE OF RAINBOW GARDENS, Appellant.

*Opinion filed September 18, 1958.*

WILLIAM SULKIN, and HARRY G. FINS, both of Chicago, for appellant.

HYER, GILL & BROWN, of Rockford, (ROBERT C. GILL, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court.

The circuit court of Boone County entered an order dissolving the village of Rainbow Gardens under the terms of section 7—49.1 of the Revised Cities and Villages Act, and the village has directly appealed to this court on the ground that the statute is unconstitutional.

From the record it appears that on December 11, 1957, the Board of Supervisors of Boone County filed a petition in the circuit court of Boone County alleging in substance

that, inasmuch as the population of the village of Rainbow Gardens was not determined by the Bureau of the Census under the last preceding decennial census, a special census was taken by the Federal Bureau of the Census on July 19, 1957, at the request of petitioners, as provided in section 7—49.1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, chap. 24, par. 7—49.1); that this census showed the village of Rainbow Gardens to have 46 inhabitants; and that since the foregoing statute provides for dissolution of municipalities with less than 50 inhabitants according to the last regular or special Federal census, the village of Rainbow Gardens should therefore be dissolved.

The village, hereinafter referred to as respondent, filed a motion to dismiss the petition, challenging the constitutionality of section 7—49.1 on the grounds that it violates the guarantees for due process of law in the Illinois and Federal constitutions; that it infringes the doctrine of separation of powers set forth in article III of the Illinois constitution, insofar as it makes the Federal census conclusive evidence of an issue of fact; that it constitutes an unreasonable classification in violation of section 22 of article IV of the Illinois constitution; and that it conflicts with section 8 of title 13 of the U.S. Code, and the supremacy clause of the Federal constitution. In support thereof, respondent filed the affidavit of John Gibbons, a village trustee, that the village had on July 19, 1957, and has continuously had, more than 50 inhabitants.

A counteraffidavit was filed by petitioner by its counsel stating that the population of the village of Rainbow Gardens on July 19, 1957, as shown by the special Federal census, was less than 50 inhabitants, and was 46 inhabitants.

On the basis of the foregoing pleadings and evidence the court denied respondent's motion to dismiss, and entered judgment ordering that the village be dissolved.

In determining the propriety of the decision, and resolving the constitutional questions, it is necessary first to

set forth *in haec verba* the terms of the controverted section of the Revised Cities and Villages Act:

"Upon application by the county board of any county to the circuit court, and after a hearing upon such notice as may be directed by such court, any municipality which has less than 50 inhabitants according to the last preceding Federal census may be ordered by the court to dissolve. After service of such order upon the corporate authorities of the municipality acting at that time they shall proceed to close up the business affairs of the municipality as expeditiously as possible and in the same manner as is provided by Sections 7—47, 7—48 and 7—49 in the case of voluntary dissolution. The court may enforce compliance with its order by proceedings for contempt. If ever there is in existence any municipality in which the Bureau of the Census did not determine the population when the last preceding decennial census was taken, the county board of the county in which such municipality is located may, at county expense, arrange with the Bureau of the Census to take a special census in such municipality."

With reference to respondent's contention that insofar as this statute makes the Federal census conclusive evidence of the population of a municipality it deprives the municipality of the constitutional guarantees of due process of law, it is evident that under the doctrine of legislative supremacy over municipal corporations, repeatedly reaffirmed by this court, municipal corporations cannot properly assert the protection of the due-process clause against action of the State government. *People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600; *People ex rel. Dixon* v. *School District,* 2 Ill.2d 454.

The doctrine of legislative supremacy is expounded by the court in the *Gutknecht case* at p. 621: "Over the years, the doctrine of legislative supremacy over the territorial limits, the property and the funds of municipal corporations has been frequently applied. [Citations] In *People ex rel.*

*Taylor* v. *Camargo Community Consolidated School Dist.*, 313 Ill. 321, the court, speaking of 'public municipal corporations,' said, p. 324: 'The character of the functions of such municipal corporations, the extent and duration of their powers and the territory in which they shall be exercised rest entirely in the legislative discretion. The governmental powers which they may exercise and the property which they may hold and use for governmental purposes are equally within the power of the legislature. * * * The State may, with or without the consent of the inhabitants or against their protest, and with or without notice or hearing, take their property without compensation and vest it in other agencies or hold it itself, expand or contract the territorial area, divide it, unite the whole or part of it with another municipality, apportion the common property and the common burdens in accordance with the legislative will, and it may abolish the municipality altogether. The property of such corporations is public property in the hands of State agents for certain purposes and is subject to the will of the legislature. It has been held so in many cases.' Our decisions in *People* v. *Deatherage,* 401 Ill. 25; *Kocsis* v. *Chicago Park District,* 362 Ill. 24, and *Town of Cicero* v. *City of Chicago,* 182 Ill. 301, to cite only a few of many, rest upon this principle."

More recently this court has reiterated the doctrine in *People ex rel. Dixon* v. *School Dist.,* 2 Ill. 2d 454, with reference to a school district, and has stated at p. 466, "A school district has no such property right of which it may be deprived in violation of section 2 of article II of the State constitution." Nor does a municipal corporation have any "privileges and immunities" under the Federal constitution which it may invoke against the State, as its creator. *Williams* v. *Mayor of Baltimore,* 289 U.S. 36, 77 L. ed. 1015.

With reference to respondent's further contention that the provision of the controverted statute making the Federal census conclusive of the factual issue of population invades

the province of the judiciary in violation of the doctrine of the separation of powers set forth in article III of the Illinois constitution, it is apparent that this precise argument has neither been considered nor adjudicated by the courts of this State. They have, however, commented upon the practice of determining the population of municipal corporations according to the Federal census, and we shall note the tenor of such comments for whatever light they may cast upon this constitutional question.

The courts have stated that judicial notice will be taken of the Federal census in determining the population of municipalities to ascertain whether they are subject to statutes governing municipalities of a designated population. (*Chicago and Alton Railroad Co., v. Baldridge,* 177 Ill. 229; *People ex rel. Christensen* v. *Board of Education,* 393 Ill. 345). Moreover, if such statutes do not prescribe by what method population is to be determined, it has been held that the proper basis is the official Federal census, as provided in section 1—9 of the Revised Cities and Villages Act. *People ex rel. Nicholson* v. *Hinsdale,* 281 Ill. App. 394.

This section of the act, (Ill. Rev. Stat. 1957, chap. 24, par. 1—9) comparable to the controverted statute herein, in that it makes the official census conclusive evidence of population, provides: "Whenever in this Act any provision thereof is based upon the number of inhabitants, the number of inhabitants of the municipality shall be determined by reference to the latest census taken by authority of the United States or this State, or of that municipality. * * * And the several courts in this state shall take judicial notice of the population of any municipality, as the population appears from the latest Federal, State, or municipal census so taken."

Under this section, which is designed to solve the uncertainties of establishing official knowledge of when the population of a municipality has reached the point when a blanketing provision becomes effective (*People ex rel.*

*Trapp* v. *Tanner,* 10 Ill. App. 2d 155), it has been held that the Federal figures are conclusive, and may not be contradicted by the testimony of Federal experts as to the actual population on the crucial date, based upon estimates of the average annual population increase (*People ex rel. Nicholson* v. *Village of Hinsdale*); and that the municipality is obliged to accept the population figures of the Federal census even though the Secretary of State had issued no certificate of population. (*Board of Trustees* v. *Village of Glen Ellyn,* 337 Ill. App. 183). It has also been noted that there is no Illinois case in which the exercise of governmental power was dependent upon population where it was not held that the population was to be determined by an official census. (*People ex rel. Nicholson* v. *Village of Hinsdale; People ex rel. Trapp* v. *Tanner.*) In that connection the court in the *Glen Ellyn case* pointed out at p. 193: "It is apparent that a careful reading of par. 1—9 indicates that in imposing the standard of determining population, the legislature intended that the figures be that of an official census by a government unit, as distinguished from other tabulations or other evidence."

The comments of the courts with respect to section 1—9 of the Revised Cities and Villages Act are equally applicable to section 7—49.1, involved herein, which refers only to the Federal census as a basis of determining population. Moreover, the statutes are indistinguishable as far as this constitutional question is concerned, since if it is an infringement of the judicial function to make the Federal census conclusive evidence of population, as respondent contends, it is no less an infringement if the State and municipal censuses are also made conclusive evidence of population as provided in section 1—9.

While we are cognizant of the general rule cited by respondent that the legislature does not have the power to declare what shall be conclusive evidence of a fact, as that would invade the province of the judiciary (*Carolene*

*Products Co.* v. *McLaughlin,* 365 Ill. 62; *Alton Railroad Co.* v. *Commerce Com.* 382 Ill. 478), we find that this rule has no application here. Although the statute prescribes that the Federal census (regular or special) shall be conclusive evidence of population, that is the standard which the courts themselves have deemed determinative, and of which they have taken judicial notice, even if not prescribed by any statute. In fact, there does not appear to be any case in Illinois, or in any other jurisdiction where the courts have allowed such census figures to be contradicted by evidence of population submitted by experts or interested parties, as respondent urges in the case at bar. Hence there is no deprivation or infringement of judicial deliberation effected by the controverted statute. It is clearly distinguishable from that involved in the *Carolene Products case* relied upon by respondent, where the unconstitutional statute prescribed an arbitrary and highly debatable standard of what shall constitute conclusive evidence of adulterated milk, and then directed that the sale of such milk shall be deemed a fraud.

Furthermore, this provision that the Federal census shall be conclusive evidence of population is founded not only in established practice in Illinois and other jurisdictions (14 C.J.S. 103), but in reason and sound public policy. If the correctness of the population figures in the Federal census, regular or special, could be challenged by interested persons with diverse tabulations of the actual population, statutes applicable to municipalities with designated populations could never be enforced, and chaos in the law would result.

It is our judgment, therefore, that section 7—49.1 of the Revised Cities and Villages Act, insofar as it makes the Federal census, taken in the authorized manner, conclusive evidence of the population of a municipality, in no way offends the doctrine of separation of powers set forth in article III of the Illinois constitution.

Respondent argues further that the classification for the dissolution of municipalities effected by the controverted statute is arbitrary and in violation of the due-process guarantees and of section 22 of article IV of the Illinois constitution providing that, "The General Assembly shall not pass local or special laws * * * changing or amending the charter of any town, city or village."

Classification is primarily a legislative function with which there should be no judicial interference, except to determine whether the legislative action is clearly unreasonable. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392). With reference to the classification of municipalities, Justice Cardozo stated in *Williams* v. *Mayor of Baltimore,* 289 U.S. 36, at p. 42 : "The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense. Within the field where men of reason may reasonably differ, the legislature must have its way."

The power of the legislature to classify municipal corporations on the basis of population, and to enact laws applicable to each class where there is a reasonable basis for the classification in view of the statutory objective, has been reiterated in the Illinois cases (*Gaca* v. *City of Chicago,* 411 Ill. 146, and cases cited therein) ; and those who attack the classification have the burden of proving its unreasonableness. *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103; *Stewart* v. *Brady,* 300 Ill. 425.

The statute herein classifies municipalities with a population of less than 50 persons for the purpose of dissolution. It is evident that by reason of their smallness such municipalities would be beset with difficulties of providing fire and police protection as well as being subject to domination by a single individual or group, who could use the power of a municipality for private rather than public goals. In this connection petitioner has pointed out that the legislature, in selecting this classification for dissolution could have

envisaged a situation where a single individual or family could control the laws of such a municipality to legalize the operation of a tavern at all hours of the day and night, and adversely effect the surrounding areas.

Although we recognize that a small municipality with a population of over 50 persons might also be subject to the same domination and ineffectiveness as a unit of government, however, it is not necessary that the classification include all of the evils which might possibly be brought under its terms, nor that it be scientific, logical or consistent, provided it rests upon a reasonable basis. *Gaca* v. *City of Chicago,* 411 Ill. 146, 150.

In our judgment the classification of municipalities with a population of less than 50, as determined by the latest regular or special Federal census, bears a direct and reasonable relation to the ineffectiveness of such municipalities as agents of the State, and constitutes a reasonable basis for their dissolution. Therefore, respondent has not sustained the burden of establishing the unreasonableness of the classification, and no constitutional provision is offended.

Respondent argues finally that the controverted statute is repugnant to section 8 of title 13 of the United States Code. This section provides: "In no case shall information furnished under the authority of this section be used to the detriment of the person to whom such information relates." Respondent insists that the use of Federal census figures to determine the population of municipalities as authorized by the controverted section 7—49.1 of the Revised Cities and Villages Act constitutes the use of census information against a municipality to effect its dissolution, and is, therefore, in direct violation of this Federal law.

A careful reading of this provision of the United States Code in its proper context indicates that the prohibition against the use of information does not refer to the end result of the census, *i.e.,* the population figure, but refers to the use of personal information procured from people in the

course of taking the census. The population figure is not information furnished by any one person, nor by the municipality, which itself gives no information. Consequently, we find the interpretation and application of the Federal statute, urged by respondent, to be an unwarranted distortion of its terms and of the Congressional intent.

On the basis of this analysis it is our judgment that the constitutionality of this statute should properly be upheld, and that the petition, filed by the Board of Supervisors of Boone County for the dissolution of the village of Rainbow Gardens was properly allowed by the circuit court of Boone County, and its order is affirmed.

*Order affirmed.*