THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR J. VALENTINE, Defendant-Appellee.—(THE CITY OF CARBONDALE, Petitioner-Appellant.)

Fifth District   No. 76-138

Opinion filed July 7, 1977.

John Paul Womick, of Carbondale, for appellant.

David W. Watt, Jr., of Murphysboro, for appellee Arthur J. Valentine.

No appearance for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

The city of Carbondale appeals from an order of the Circuit Court of Jackson County denying its petition to intervene and its motion to dismiss, and granting the petition of Arthur J. Valentine to expunge the record of arrest pertaining to him from the official records of the city of Carbondale.

Valentine was a police officer employed by the city of Carbondale. He has since been dismissed from service. On December 14, 1975, an information was filed by the State's Attorney of Jackson County charging him with the offense of rape. On December 22, 1975, the information was dismissed for lack of sufficient evidence on motion of the State's Attorney; no indictment was sought or returned against Valentine.

On January 9, 1976, Valentine moved to expunge the official record of his arrest from the arresting agencies as provided in section 5 of "An Act in relation to criminal identification and investigation" (Ill. Rev. Stat. 1975, ch. 38, par. 206—5). The motion was directed to the Honorable John H. Clayton, chief judge of the First Judicial Circuit. Neither the city of Carbondale nor any other governmental entity that could be described as an "arresting agency" was made a party to the proceedings or served with notice of the motion.

The city of Carbondale sought leave to intervene and file a motion to dismiss, which leave was denied by Judge Clayton. An order was entered on February 17, 1976, expunging the record of Valentine's arrest from the official records of the Carbondale Police Department, the Illinois State Police and the office of the sheriff of Jackson County and requiring the return to Valentine of all photographs, fingerprints or other records of identification relating to the arrest of Valentine by these arresting agencies.

In the trial court the city attempted to raise the unconstitutionality of the statute in question, as contrary to the fourteenth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution of 1970, in denying to the "arresting authority" and specifically the city of Carbondale due process of law. The same assignment of error is made on appeal. Additionally, the city argues that

the statute contravenes section 18 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 18) in that it authorizes the entry of an order or judgment requiring the city to perform acts, that is, "expunge" records, in the absence of jurisdiction over the city.

The petition to intervene filed pursuant to section 26.1(1)(b) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1)(b)) stated that Valentine was appealing his dismissal from service and that the city had an interest in maintaining Valentine's arrest record as the allegations resulting in his arrest were in part the basis for his dismissal.

The statute in question requires all police agencies in the State of Illinois to furnish to the Department of Law Enforcement fingerprints and descriptions, including apparently photographs, of all persons arrested on charges of violating certain penal statutes of the State. All photographs, fingerprints or other records of identification must be returned to the person so charged upon his acquittal or release without prosecution. The statute provides further that if the person has no previous conviction of any criminal offense or municipal ordinance, the chief judge of the circuit, or any judge designated by the chief judge, may, additionally, upon verified petition of the person so charged and acquitted or released, order the record of arrest expunged from the official records of the arresting authority. The statute provides that notice of the filing of such a petition to expunge shall be served on the State's Attorney and, unless the State's Attorney objects within 30 days, the court shall enter an order granting or denying the petition.

The city has framed its attack on the trial court's order of expungement in terms of intervention, want of jurisdiction over the city and unconstitutionality of the statute. It suggests further that no evidence was adduced at the hearing on the petition of Valentine indicating that the city was an arresting entity.

■■ The short answer to the latter complaint is that the order is inoperative as to the city if in fact it was not an arresting authority as it then has nothing to expunge from its records. As to intervention as of right or discretionary intervention, it is clear that the statute providing for expungement does not contemplate an adversary proceeding in which the city may participate. It does not require that the city be made a party as it intends the State's Attorney or appropriate prosecuting authority to be the spokesman for the public and to represent the public interest, including that of the city of Carbondale and its police department.

The city argues that its interest in maintaining accurate and complete criminal identification records is not parallel to the prosecuting authorities' duty to prosecute law violators. This may be true, but the legislature in its wisdom may enact legislation extending to individuals arrested rights and privileges that may reduce the effectiveness of a police

department's criminal identification system; it may impose on municipalities and their employees the burden of performing acts other than in an adversary framework; in this context the concept of jurisdiction expressed in the Civil Practice Act is meaningless unless the statute imposing the duties falls from some constitutional infirmity.

Thus the issue is whether a statute may authorize a court to enter an order requiring a municipality through its officers and employees to perform acts without first giving the municipality notice and an opportunity to be heard.

The statute before us has been amended from time to time, presumably in response to the decisions in *Maxwell v. O'Connor*, 1 Ill. App. 2d 124, 117 N.E.2d 326 (1st Dist. 1953) (no jurisdiction in criminal court of Cook County); *Kolb v. O'Connor*, 14 Ill. App. 2d 81, 142 N.E.2d 818 (1st Dist. 1957) (statute not applicable to Chicago police commissioner); *People v. Lewerenz*, 42 Ill. App. 2d 410, 192 N.E.2d 401 (1st Dist. 1963) (statute only applicable to Department of Public Safety); and *City of Chicago v. Mayers*, 68 Ill. App. 2d 442, 216 N.E.2d 298 (1st Dist. 1966) (improper parties defendant). These authorities are thus of no assistance in deciding the question in the instant case in view of the present wording of section 5 (Ill. Rev. Stat. 1975, ch. 38, par. 206—5). The recent case of *St. Louis v. Drolet*, 39 Ill. App. 3d 27, 348 N.E.2d 289 (3d Dist. 1976), *aff'd sub nom. In re St. Louis*, 67 Ill. 2d 43, 364 N.E.2d 61 (1977), did not present the issues now before us.

The General Assembly has expressed its continuing concern with the right of privacy of those falsely accused of crime, notwithstanding the continuing resistance of law enforcement agencies to the full implementation of the public policy evidenced by section 5 (Ill. Rev. Stat. 1975, ch. 38, par. 206—5). As indicated, the statute has been the subject of numerous amendments to meet the procedural difficulties developed in the cases cited above. The statute strikes a balance between a concern for effective record keeping by law enforcement agencies and the right of privacy of individuals, and vests in the circuit court the discretion to decide in what instances arrest records shall be expunged or maintained by the law enforcement agencies involved on a case-by-case basis.

■■  The city first assigns as error the denial of its petition to intervene. Section 26.1 of the Civil Practice Act allows intervention as of right "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree, or order." (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1)(b).) The short answer is that the statute makes the State's Attorney, or other prosecuting officer, the representative of the public and the arresting authorities; it is not contemplated that the arresting authorities be made parties or given

an opportunity to be heard in proceedings under the expungement statute. It is true that *People v. Lewerenz* stated that the State's Attorney did not represent the police superintendent of the city of Chicago and that notice to the Cook County State's Attorney did not confer jurisdiction on the court to enter an order directed to the superintendent; however, that case was decided before the present statute was enacted. We hold that the statute does make the State's Attorney of the county involved, that is the county of arrest, the representative of the arresting authority, here the city of Carbondale, and that intervention, either of right or permissive, is not authorized or contemplated.

The city argues that if it is not allowed to intervene, or otherwise be made a party as provided by section 25 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 25), the effect is to require the performance of acts by employees of the city when neither the city nor the employee is subject to the jurisdiction of the court or afforded an opportunity to be heard, in violation of the mandate of the Civil Practice Act and in violation of article I, section 2, of the Constitution of Illinois and the fourteenth amendment of the Constitution of the United States.

■■ The city of Carbondale is a home rule municipality. It has broad powers to enact ordinances regulating its own affairs in matters relating to public health, safety, morals and welfare (Ill. Const. 1970, art. VII, §6(a)); however, the statute here under· consideration is an integral part of the comprehensive law of Illinois dealing with criminal law and procedure, specifically criminal identification and investigation (Ill. Rev. Stat. 1975, ch. 38, par. 206—1 *et seq.*) and is a traditional area of statewide legislation and concern. The city suggests that the statute is in conflict with a city ordinance, although no ordinance conflicting with section 5 has been called to our attention. If such an ordinance does exist it must yield to the supremacy of State law in an area where, by the nature of the subject matter and its comprehensive regulation by the State for many years, State power to act must be deemed exclusive. In other words, this is not an area pertaining to the government and affairs of the city, and therefore, an appropriate subject for the exercise of municipal home rule power. We would note that the expungement provisions of the statute are concerned with the right of privacy of all persons, regardless of residence or place of arrest. See *Metropolitan Sanitary District v. City of Des Plaines*, 63 Ill. 2d 256, 347 N.E.2d 716 (1976); *Carlson v. Village of Worth*, 62 Ill. 2d 406, 343 N.E.2d 493 (1976); *Ampersand, Inc. v. Finley*, 61 Ill. 2d 537, 338 N.E.2d 15 (1975); *City of Chicago v. Pollution Control Board*, 59 Ill. 2d 484, 322 N.E.2d 11 (1974); *cf. Stryker v. Village of Oak Park*, 62 Ill. 2d 523, 343 N.E.2d 919 (1976).

While the home rule provisions of the Illinois Constitution of 1970 have

changed the relationship of the State to home rule municipalities and counties in many respects (see Ill. Const. 1970, art. VII, §6), the State still retains the general power to control its political subdivisions.

■■ It is a well-established principle of constitutional law that restraints against State action under the fourteenth amendment to the Constitution of the United States do not apply against a State in its relationship to subsidiary units of local government and municipalities. The amendment states that no *State* shall deprive any *person* of life, liberty or property without due process of law, nor deny any *person* within its jurisdiction the equal protection of the laws. Municipal governmental entities have never been held to be "persons" within the meaning of the amendment, which was intended to guard the liberty and property of natural persons and corporations.

■■ In the performance of governmental functions, the State has the power to control units of local government through legislation without regard to considerations of due process or equal protection of the laws both as to substance and procedure, and it may require a city to perform acts through its officers and employees against its corporate will. See, *e.g.*, *City of Trenton v. New Jersey*, 262 U.S. 182, 67 L. Ed. 937, 43 S. Ct. 534; *Williams v. Mayor of Baltimore*, 289 U.S. 36, 77 L. Ed. 1015, 53 S. Ct. 431; 16A C.J.S. *Constitutional Law* §570 (1956).

The collecting and maintaining of criminal identification records is clearly a governmental function.

"It is an established principle of constitutional law that those constitutional restraints imposed by the Federal Constitution against State action do not apply against the State in favor of its own municipality, insofar as equal protection of the laws and due process of the law under the Fourteenth Amendment are concerned." (*Shelby v. City of Pensacola*, 112 Fla. 584, 587-88, 151 So. 53, 55 (1933); and see *Town of Waterford v. Connecticut State Board of Education*, 148 Conn. 238, 169 A.2d 891 (1961); *Baltimore County v. Churchill, Ltd.*, 271 Md. 1, 313 A.2d 829 (1974); *Board of Commissioners v. Kokomo City Plan Com.*, 263 Ind. 282, 330 N.E.2d 92 (1975).)

We believe this to be the settled law of Illinois. See *People ex rel. Taylor v. Camargo Community Consolidated School District No. 158*, 313 Ill. 321, 145 N.E. 154 (1925); *People v. Deatherage*, 401 Ill. 25, 81 N.E.2d 581 (1948); *People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 111 N.E.2d 626 (1953); *Supervisors of the County of Boone v. Village of Rainbow Gardens*, 14 Ill. 2d 504, 153 N.E.2d 16 (1958); *Meador v. City of Salem*, 51 Ill. 2d 572, 284 N.E.2d 266 (1972).

With regard to legislative supremacy over the powers and functions of municipal corporations our supreme court has said that "[t]he character

of the functions of such municipal corporations, the extent and duration of their powers * * * rests entirely in the legislative discretion. * * * The State may, *with or without the consent of the inhabitants or against their protest, and with or without notice or hearing* * * * abolish the municipality altogether." (*People ex rel. Taylor v. Camargo Community Consolidated School Dist. No. 158*, 313 Ill. 321, 324, 145 N.E. 154, 155. Emphasis added.) The quoted language may not accurately express the relationships existing between the State and home rule units of local government under the Illinois Constitution of 1970; this we need not decide. So far as the narrow issue before the court, we believe it properly addresses the city's constitutional argument, the sense of the quote in the *Taylor* case.

*City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 338 N.E.2d 19 (1975), and more recently, *City of Urbana v. Houser* (Docket No. 48793, March Term 1977), ___ Ill. 2d ___, ___ N.E.2d ___, indicate that a municipality has standing to urge the unconstitutionality of a legislative classification under the Illinois Constitution. We do not read these cases as holding that a municipal corporation may otherwise assert the protection of the due process clause against legislative action of the State and thus disturb the consistent decisions of the supreme court of this State in regard to the doctrine of legislative supremacy.

The judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

JONES and G. MORAN, JJ., concur.