FRANCISCAN HOSPITAL, Plaintiff-Appellee, v. THE TOWN OF CANOE CREEK, Defendant-Appellant.

Third District   No. 78-460

Opinion filed December 19, 1979.

Douglas C. Scovil, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

James J. Mesich, of Walker, Gende, Hatcher, Doyle & Giamanco, of Moline, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Rock Island Franciscan Hospital, brought this suit in the circuit court of Rock Island County against the defendant, Town of Canoe Creek, to recover payment for services rendered to a resident of Canoe Creek Township pursuant to article VII of the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 7—1 *et seq.*). Following a bench trial, the trial court entered judgment for plaintiff in the amount of $2,145.

Article VII of the Illinois Public Aid Code (hereinafter the Code), captioned "Local Aid to the Medically Indigent" (hereinafter AMI) establishes a program under which individuals not eligible for other specified programs of public assistance may receive aid in meeting the costs of medically related services or funeral expenses from local governmental units. The basic elements of eligibility for AMI are that the individual be a resident of the governmental unit, fail to qualify for other assistance and have nonexempt income and assets, over a three-month period, which are above a departmental standard but below the amount of the individual's medical or funeral expenses. After the individual pays a portion of the expenses, the governmental unit pays the remainder. In the case at bar, applicant Roy Minge resided in Canoe Creek Township, was ineligible for other assistance, and had a family of six members to support on a three-month net income of $2,062.86. The Minge family lived in a rented mobile home furnished with an old refrigerator and stove, two half beds and one full bed, and was unable to pay for Clara Minge's hospitalization for a lump on her left side.

On appeal, defendant asserts two constitutional challenges concerning the AMI provisions: (1) that the provisions represent an invalid delegation of legislative power to an administrative agency and (2) that the rules promulgated pursuant to these provisions are violative of due process and equal protection. The challenged portions of the Code are as follows:

"§7—1. Eligibility Requirements.) Aid in meeting the costs of necessary medical, dental, hospital, boarding or nursing care, or burial shall be given under this Article to or in behalf of any person who meets the eligibility conditions of Sections 7—1.1 through 7—1.3." Ill. Rev. Stat. 1975, ch. 23, par. 7—1.

"§7—1.1 Residence.) * * *

The local governmental unit in which the person is at the time of his illness or death shall give or cause to be given the necessary aid. * * *" Ill. Rev. Stat. 1975, ch. 23, par. 7—1.1.

"§7—1.2 Need.) The money, property, or other resources available to the person * * * must be insufficient to meet the costs of necessary care, as defined by standards established in accordance with Section 7—2 of this Article." Ill. Rev. Stat. 1975, ch. 23, par. 7—1.2.

"§7—2. Amount of Aid-Standards.) The person shall be given such care as may be necessary and proper, including transportation, and if he dies he shall be decently buried.

The amount and nature of the care provided shall be determined in accordance with a uniform standard of eligibility established by the Illinois Department and its rules and regulations. * * * The standard shall include provision for determining what, if any, portion of the income, property or other resources of an applicant or recipient is available to meet the cost of necessary care. * * *" Ill. Rev. Stat. 1975, ch. 23, par. 7—2.

"§7—6 Recoveries.) Expenses incurred under this Section on behalf of a person having sufficient money, property, or other resources to meet in whole or in part the cost of care or burial * * * shall be recoverable * * *." Ill. Rev. Stat. 1975, ch. 23, par. 7—6.

Defendant premises its challenge of these provisions on the fact that the terms "necessary" and "sufficient" and the captions "medically indigent" and "need" are not defined in article VII, resulting in an improper delegation of legislative power to the Illinois Department of Public Aid (hereinafter the Department) for lack of prescribed standards.

■■ Under the doctrine of the separation of the powers of government, the lawmaking function is assigned exclusively to the legislature. Except when authorized by the constitution, the legislature cannot delegate the power to make laws to any other authority or body. (*E.g., People ex rel. Thomson v. Barnett* (1931), 344 Ill. 62, 176 N.E. 108.) The evolving aspects of the valid delegation of legislative authority to administrative agencies and the need for standards or guidelines to validate such delegation was recently and comprehensively discussed in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, where the court concluded:

"Accordingly, we find that the view which has developed through the decisions of this court in recent years requires that the legislature, in delegating its authority provide sufficient identification of the following:

(1) The *persons* and *activities* potentially subject to regulation;

(2) The *harm* sought to be prevented; and

(3) The general *means* intended to be available to the

administrator to prevent the identified harm." (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, 369 N.E.2d 875, 879.)

The question presented for our determination thus becomes whether the AMI provisions meet the three *Stofer* identification guidelines.

■■■ Application of the first *Stofer* guideline that regulated persons and activities be sufficiently identified requires the legislature to define the scope of the legislation so as to put interested persons on notice of the possibility of administrative actions affecting them. This requirement is subject to practical limitations stemming from the complexity of the regulated subject. (See *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, 369 N.E.2d 875, 879.) Article VII affects those individuals within a local governmental unit at the time of illness or death who are ineligible for aid under other Code provisions and whose resources are insufficient to meet the costs of necessary care. While we do not reach the question of whether local governmental units are "persons" in the context of article VII, such units are likewise clearly identified in the statutory language, as is the regulated activity of providing needed aid. Thus, the first prong of the *Stofer* test is met.

■■ With regard to the second guidline of sufficiently identifying the harm to be prevented, it is sufficient if "it is apparent what types of evil the statute is intended to prevent." (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 373, 369 N.E.2d 875, 879.) The harm to be prevented is clearly set out in article I of the Code which indicates its concern with "the alleviation and prevention of poverty" and promoting "the health and welfare" of the people of Illinois. (Ill. Rev. Stat. 1975, ch. 23, par. 1—1.) The second prong of the test is thus met as "the legislature may use somewhat broader, more generic language than in the first element." *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 373, 369 N.E.2d 875, 879.

■■ The third guideline of sufficiently identifying the available means requires the legislature to "specifically enumerate the administrative tools (*e.g.*, regulations, licenses, enforcement proceedings) and the particular sanctions, if any, intended to be available." (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 373, 369 N.E.2d 875, 879.) The administrative tools of article VII and other articles of the Code are regulations. Article VII specifically dictates "a uniform standard of eligibility" and refers to the "rules and regulations" of the "Illinois Department." (Ill. Rev. Stat. 1975, ch. 23, par. 7—2.) Article XII similarly calls for "standards by which need for public aid will be determined" and indicates factors which the Department must provide and include:

"The standards shall provide a livelihood compatible with health and well-being for persons eligible for financial aid under any

Article of this Code. They shall include recognition of any special needs * * *. * * * Standards established to determine the eligibility of medically indigent persons for aid under Articles V or VII shall take into account the requirements of the spouse or other dependent or dependents of the applicant for medical aid.
* * *

In establishing standards under this Section the Illinois Department shall consult with the Legislative Advisory Committee, as provided in Section 12—14." (Ill. Rev. Stat. 1975, ch. 23, par. 12—4.11.)

Thus it can be seen that regulations are sufficiently identified as the administrative tool to be utilized, that standards and guidelines are provided, and that legislative supervision in establishing these standards is mandated.

■ Defendant correctly notes the broad enabling language of article VII and other Code provisions, as well as the failure of the legislature to define the aforementioned terms and captions. These factors are not dispositive of the issue of the propriety of delegation. Latitude must be given to administrative agencies (*cf. James v. Cook County Department of Public Aid* (1970), 126 Ill. App. 2d 75, 261 N.E.2d 420), and an examination of the Code evidences a broad delegation of power. Consequently the Department can do all that is reasonably necessary to execute its powers and perform its statutory duties. (Accord, *Cornue v. Weaver* (1975), 29 Ill. App. 3d 546, 331 N.E.2d 148.) As the court noted in *Hill v. Relyea* (1966), 34 Ill. 2d 552, 555, 216 N.E.2d 795, 797:

"* * * It is an established rule that the General Assembly cannot delegate its general legislative power to determine what the law shall be. However, it may delegate to others the authority to do those things which the legislature might properly do, but cannot do as understandingly or advantageously. [Citations.] Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement, [citations] and the precision of the permissible standard must necessarily vary according to the nature of the ultimate objective and the problems involved. [Citations.]"

Eleven years later, the court again commented on the degree of detail required in legislative standards:

"Many of our early cases adhere to the notion that administrative rule making basically is interstitial, interpolating among the standards set by the legislature to fill in details and create a comprehensive regulatory scheme. [Citations.] Subsequent

experience, however, with the administrative regulation of highly complex and technical subjects leads us to conclude that the administrative task necessarily differs substantially from the traditional model. * * * In most cases, therefore, the administrator's task is . . . to extrapolate from the broad language of his enabling statute, and, using the regulatory tools given him by the legislature, to deal with the problems which the legislature sought to address.

To require the legislature continually to determine the specific actions which ought to be prohibited and those which ought to be required would be to render the regulation of many matters hopelessly inefficient. * * *" *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 370-71, 369 N.E.2d 875, 878.

■■ In an inflationary society where incomes and expenses are in a continual state of flux, legislative determination of such relative factors as need and indigency for all persons in the society would result in inefficient regulation. The legislature, in its wisdom, has delegated this function to an expert administrative body. Article VII and companion provisions of the Code confer authority and discretion as to the execution of the law pursuant to standards not unlike those previously found adequate. (*Cf. e.g., Hill v. Relyea* (1966), 34 Ill. 2d 552, 555, 216 N.E.2d 795, 797 (mental patient discharge " 'as the welfare of such person and the community may require' "); *Board of Education v. Page* (1965), 33 Ill. 2d 372, 376, 211 N.E.2d 361, 363 (" 'specifications for the minimum requirements * * * which will conserve the health and safety of the pupils' ") and sufficiently identifies the persons, activities, harm, and means specified by the legislature. We therefore hold that the delegation of article VII does not violate the constitutional provision of separation of governmental powers.

Defendant's second constitutional challenge is that the rules promulgated by the Department pursuant to the enabling provisions of article VII and other articles of the Code are violative of due process and equal protection in that no reasonable relationship exists between the means selected by the Department and the purpose of article VII and that necessary standards, guidelines, and definitions are lacking.

■■ The touchstone to justiciability is injury to a legally protected right. The constitutional rights being here asserted by defendant have been granted to persons by the Constitution of the United States and the Constitution of Illinois. The difficulty with defendant's second challenge is the general rule that municipal corporations are not persons within the protective ambit of the fourteenth amendment. (*Williams v. Mayor & City Council of Baltimore* (1933), 289 U.S. 36, 77 L. Ed. 1015, 53 S. Ct. 431; *City of Trenton v. New Jersey* (1923), 262 U.S. 182, 67 L. Ed. 937, 43

S. Ct. 534; *City of Newark v. New Jersey* (1923), 262 U.S. 192, 67 L. Ed. 943, 43 S. Ct. 539.) As stated by the court in *People v. Valentine* (1977), 50 Ill. App. 3d 447, 365 N.E.2d 1082, 1086:

"❋ ❋ ❋ Municipal governmental entities have never been held to be 'persons' within the meaning of the amendment, which was intended to guard the liberty and property of natural persons and corporations.

In the performance of governmental functions, the State has the power to control units of local government through legislation without regard to considerations of due process or equal protection of the laws both as to substance and procedure, and it may require a city to perform acts through its officers and employees against its corporate will. [Citations.]
❋ ❋ ❋

'It is an established principle of constitutional law that those constitutional restraints imposed by the Federal Constitution against State action do not apply against the State in favor of its own municipality, insofar as equal protection of the laws and due process of the law under the Fourteenth Amendment are concerned.' [Citations.]

We believe this to be the settled law of Illinois. See *People ex rel. Taylor v. Camargo Community Consolidated School District No. 158*, 313 Ill. 321, 145 N.E. 154 (1925); *People v. Deatherage*, 401 Ill. 25, 81 N.E.2d 581 (1948); *People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 111 N.E.2d 626 (1953); *Supervisors of the County of Boone v. Village of Rainbow Gardens*, 14 Ill. 2d 504, 153 N.E.2d 16 (1958); *Meador v. City of Salem*, 51 Ill. 2d 572, 284 N.E.2d 266 (1972)."

Defendant argues that the rule is inapplicable because it is not challenging the actions of the legislature but those of an administrative agency created by the legislature. Defendant cites no authority for its position nor has our research revealed any support for this proposition. Therefore we hold that defendant is not entitled to raise the questions of due process and equal protection as it is not under the protection of these constitutional entitlements.

Accordingly the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.