THE VILLAGE OF SAUGET, Appellant, v. THE POLLUTION CONTROL BOARD *et al.* (The Environmental Protection Agency, Appellee).— MONSANTO COMPANY, Appellant, v. THE POLLUTION CONTROL BOARD *et al.* (The Environmental Protection Agency, Appellee).

Fifth District   No. 5—89—0198

Opinion filed December 13, 1990.—Rehearing denied February 26, 1991.

Richard J. Kissel, Susan M. Franzetti, and Lee R. Cunningham, all of Gardner, Carton & Douglas, of Chicago (Harold G. Baker, Jr., of counsel), for petitioner Village of Sauget.

Harvey M. Sheldon and Shell J. Bleiweiss, both of McDermott, Will & Emery, of Chicago, for petitioner Monsanto Company.

Neil F. Hartigan, Attorney General, of Springfield (Robert Ruiz, Solicitor General, of Chicago, and James L. Morgan, Assistant Attorney General, of Springfield, of counsel), for respondent.

JUSTICE CHAPMAN delivered the opinion of the court:

The Village of Sauget (Sauget) and the Monsanto Company (Monsanto) appeal from an order issued by the Illinois Pollution Control Board (the Board), upholding in part, denying in part, and modifying in part the conditions of a National Pollutant Discharge Elimination System (NPDES) permit issued by the Illinois Environmental Protection Agency (IEPA) for the American Bottoms Regional Wastewater Treatment Facility (AB Facility).

We begin our discussion with a brief historical background. In 1986 the AB Facility began operation as a conventional biological wastewater treatment plant which was designed to provide primary and secondary wastewater treatment. When the AB Facility became operational, two of the three publicly owned treatment works facilities (POTWFs) in the region serviced by the AB Facility were closed. The waste once treated by the closed POTWFs is now treated at the AB Facility. Sauget's POTWF, known as the physical/chemical plant (P/C Plant), continues to provide primary treatment for Sauget's wastes, which are then secondarily treated at the AB Facility.

On October 26, 1984, Sauget applied for a NPDES permit for the AB Facility which was then under construction. On May 8, 1985, the IEPA issued a single draft permit covering both the AB Facility and the P/C Plant. After a series of draft permits and comments received by the IEPA, the IEPA issued a revised draft permit on October 2, 1985. By letter dated November 12, 1985, the United States Environmental Protection Agency (U.S. EPA) informed the IEPA that it requested its full, 90-day review period prior to issuing its final comments. The U.S. EPA submitted its comments to the October 2, 1985, draft permit by letters dated January 17, 1986, January 27, 1986, and February 14, 1986. In its final letter the U.S. EPA stated that it would not object to the issuance of the NPDES permit if the final permit incorporated substantive changes which the U.S. EPA therein listed. Sauget was not provided with copies of the U.S. EPA's final comment letter until March 10, 1986, when Sauget personnel met with the IEPA to discuss the proposed start-up of the AB Facility. On March 21, 1986, the IEPA issued a final NPDES permit for the AB Facility, and a final NPDES permit for the P/C Plant.

Sauget filed appeals of both the P/C Plant permit (PCB No. 86–57) and the AB Facility permit (PCB No. 86–58), naming the IEPA

and the U.S. EPA as respondents. The U.S. EPA was dismissed as a party on the grounds of sovereign immunity. The Board consolidated PCB No. 86—57 with PCB No. 86—62 (Monsanto Company's appeal of the P/C Plant permit), and PCB No. 86—58 with PCB No. 86—63 (Monsanto Company's appeal of the AB Facility permit). On July 11, 1986, Sauget moved for a stay of the contested permit conditions of both the AB Facility and P/C Plant permit appeals. By order dated July 31, 1986, the Board found that the contested P/C Plant permit conditions were stayed as a matter of law until a final Board decision was reached. In a separate order dated July 31, 1986, the Board granted a stay of the contested AB Facility permit conditions until January 21, 1987. On April 28, 1988, Sauget filed a motion to confirm the extension of the previously granted AB Facility stay. The Board declined to extend the stay and motion.

In a December 15, 1988, opinion and order, the Board held the P/C Plant's NPDES permit void. With regard to the AB Facility permit, the Board struck some of the contested conditions, affirmed others, and ordered the remainder to be modified. Sauget and Monsanto appeal the Board's decision with regard to the AB Facility permit, raising three issues for our review: (1) whether the contested AB Facility permit conditions should have been vacated; (2) whether the Board improperly failed to maintain the stay of the contested AB Facility permit conditions; and (3) whether the Board's affirmance of the internal discharge limits in the AB Facility permit was beyond its authority and against the manifest weight of the evidence.

With regard to the first issue, Sauget and Monsanto argue that the IEPA deprived Sauget and Monsanto of their due process rights under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). Before we reach the merits of this issue, we are confronted with the procedural question raised by the Board and the IEPA: whether a municipality (Sauget) may raise due process objections to State actions.

■ The general rule provides that municipal corporations are not persons within the protective ambit of the fourteenth amendment. (*Franciscan Hospital v. Town of Canoe Creek* (1979), 79 Ill. App. 3d 490, 496, 398 N.E.2d 413, 417.) The amendment provides, "nor shall any State deprive any *person* of life, liberty, or property, without due process of law; nor deny to any *person* within its jurisdiction the equal protection of the laws." (Emphasis added.) (U.S. Const., amend XIV.) Municipal governmental entities have never been held to be *persons* within the meaning of the amendment, which was intended to guard the liberty and property of natural persons and corporations.

(*People v. Valentine* (1977), 50 Ill. App. 3d 447, 452, 365 N.E.2d 1082, 1086.) While the case law does not analyze in detail the historical rationale of this rule, our supreme court has held that under the doctrine of legislative supremacy over municipal corporations, a municipal corporation may not assert the protection of the due process clause against action of the State government. (*Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578, 284 N.E.2d 266, 270; *Supervisors of the County of Boone v. Village of Rainbow Gardens* (1958), 14 Ill. 2d 504, 507, 153 N.E.2d 16, 18.) While many cases have held that municipalities have no standing to raise due process issues, there appears to have been some retreat from the broadness of those holdings in recent years, at least in terms of unreasonable classification. (See *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692; *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19.) However, we need not address in detail Sauget's standing since Monsanto has raised identical objections.

▪ We reject the Board's and the IEPA's contention that Monsanto's standing on the due process issues is merely derivative of Sauget's and that no independent showing has been made that Monsanto itself is entitled to due process protection or has suffered any prejudice. The law in Illinois is clear:

> "Any party to a Board hearing, * * * and any party adversely affected by a final order or determination of the Board may obtain judicial review * * *." (Ill. Rev. Stat. 1989, ch. 111½, par. 1041(a).)

It is evident from the record that Monsanto filed its separate appeals of the AB Facility permit (PCB No. 86—63) and the P/C Plant permit (PCB No. 86—62). The record includes permit appeal pleadings consisting of briefs, motions and memoranda filed by Monsanto. We note that appellees make no objection to Monsanto's contention that Monsanto was represented by counsel who appeared on its behalf at hearings below.

We reject the appellees' argument that Monsanto has summarily failed to show how it has been adversely affected by the Board's decision and the alleged due process infractions. The parties have cited no authority and our research has not revealed any authority which holds that a party forfeits its constitutional protections when it concurs in the briefs filed by another party who is not bestowed with the same constitutional protections. In the case at bar Monsanto argues that, like Sauget, it was not afforded a meaningful opportunity for notice and comment on critical permit conditions and was therefore denied due process. We find that Monsanto's due process objections are not

dependent on Sauget's objections and, therefore, we will address them.

With regard to the AB Facility permit, Monsanto argues that the U.S. EPA did not comment upon the October 2, 1985, draft permit within the time constraints provided by law; that the U.S. EPA did not provide Sauget or Monsanto with a copy of its comments; that the IEPA improperly allowed the late submission of those comments; and that the IEPA improperly made significant modifications to the draft permit based upon those comments without notice to Sauget or Monsanto and an opportunity for Sauget or Monsanto to respond to the changes. Monsanto contends that, contrary to the Board's finding, the only means for remedying the violations of Monsanto's due process rights is for the court to vacate the contested conditions in the AB Facility NPDES permit and to order the Board to direct the IEPA to issue a new draft permit.

#### U.S. EPA'S COMMENTS UNTIMELY

Section 309.108 of the Illinois Administrative Code (35 Ill. Adm. Code §309.108 (1988)) directs that upon receipt of an NPDES permit application, and a tentative determination to issue a permit, the IEPA shall notify the applicant of its intent to circulate public notice of issuance. This document, indicating the IEPA's tentative decision to issue a permit, is referred to as a draft permit. (40 C.F.R. §122.2 (1989).) A draft permit differs from a proposed permit. The latter is defined as a State NPDES permit prepared after the close of the public comment period which is sent to the U.S. EPA for review prior to final issuance. (40 C.F.R. §122.2 (1989).) The public comment period on a draft permit shall be not less than 30 days following the date of first publication of the public notice, but may be extended at the discretion of the IEPA by publication. 35 Ill. Adm. Code §309.109 (1988).

In the case at bar, the IEPA issued a draft permit on October 2, 1985. Notice indicated that the public comment period would run for 30 days. It is uncontested that the IEPA at no time extended by publication the public comment period. At the close of the public comment period, the IEPA had received two comments, both indicating a general agreement with the draft permit. The U.S. EPA did not submit any comments within this 30-day period. However, in a letter dated November 12, 1985, it requested "the full 90 day review period" to submit its comments.

Appellees argue that the U.S. EPA was well within its authority to submit comments within 90 days, pursuant to a memorandum of agreement between the U.S. EPA and itself, and pursuant to section

123.44 of the Code of Federal Regulations. (40 C.F.R. §123.44 (1989).) We disagree. The authorized comment period in memoranda of agreement and as provided in section 123.44 shall not exceed 90 days. Even if we assume the U.S. EPA was entitled to 90 days within which to submit comments, it did not do so until well after the 90-day deadline. The draft permit was issued on October 2, 1985, and the comments were not submitted until January 17, 1986, January 27, 1986, and February 14, 1986. Furthermore, the 90-day period provided for in the regulations refers to proposed permits, not to draft permits which have a 30-day public comment time limitation.

■ The Board and the IEPA cite no authority for extending the U.S. EPA's comment period as to draft permits beyond the public comment period. Section 309.109 of the Illinois Administrative Code reads:

> "30 days following the date of first publication of the public notice *** interested persons may submit their written views on the tentative determinations ***." (Ill. Adm. Code §309.109(b) (1988).)

We will not address the issue of whether the U.S. EPA qualifies as an interested person under this section. Even if we assume that the U.S. EPA is entitled to comment on draft permits (see 40 C.F.R. §123.44(j)(1989)), because the U.S. EPA failed to submit comments within the 30-day public comment period and there is no Illinois or Federal regulation otherwise authorizing the U.S. EPA to submit comments on a draft permit beyond the specified public comment period, we find that the U.S. EPA's comments were untimely.

FAILURE TO PROVIDE COPY OF COMMENTS TO APPLICANT

Section 309.109(b) of the Illinois Administrative Code states that comments submitted on tentative determinations shall be submitted to the IEPA and to the applicant. (35 Ill. Adm. Code §309.109(b)(1988).) The U.S. EPA has never submitted its comments to Sauget. Appellees do not contest Sauget's statement that Sauget first received a copy of the U.S. EPA's final comment letter of February 14, 1986, on March 10, 1986, when the IEPA provided Sauget with a copy. In the February 14, 1986, comment letter, the U.S. EPA stated that it would not object to issuance of the AB Facility permit provided certain conditions were incorporated in the permit. Such conditions concerned biomonitoring, toxicity limits, a mixing zone study, chemical monitoring, total organic carbon monitoring, internal limits, and effluent limits. Monsanto claims that the late notice of the U.S. EPA's comments effectively denied anyone an opportunity to respond to the additional

permit conditions, particularly when the final NPDES permit, including the U.S. EPA's additional conditions, was issued March 21, 1986, only 11 days after Sauget received a copy of the U.S. EPA's final comment letter.

Appellees argue that Monsanto's complaint is nonmeritorious because neither Sauget nor Monsanto was entitled to a contested hearing. Contrary to appellees' assertion, Monsanto does not argue that it was entitled to a hearing before the IEPA. Rather, it emphasizes the denial of rights to which Monsanto and Sauget would have otherwise been entitled had they been given notice of the U.S. EPA's comments as provided by regulation.

Had the U.S. EPA timely submitted its comments on the draft permit, and provided the appellants with notice of the same, a prepermit issuance hearing could have been requested. (35 Ill. Adm. Code §309.115 (1988); 40 C.F.R. §124.11 (1989).) We recognize that a hearing pursuant to these regulations is discretionary with the IEPA, yet under the circumstances appellants were denied the opportunity to request that the IEPA exert such discretion. It is significant that when asked at the hearing before the Board whether it is usual practice for the IEPA to make substantial changes without receiving or offering to receive comments from the permittee, Mr. Rick Lucas, the IEPA's municipal NPDES permit manager, testified that "generally *** we let the permittee have an additional opportunity to comment."

■ More significant with regard to the issue at bar are the requirements of section 309.108. (35 Ill. Adm. Code §309.108 (1988).) That section provides in part that if the IEPA's tentative determination is to issue the NPDES permit, that determination should at least include:

> "(1) Proposed effluent limitations, consistent with Federal and State requirements;
>
> (2) A proposed schedule of compliance, if the applicant is not in compliance with applicable requirements, including interim dates and requirements consistent with the CWA and applicable regulations, for meeting the proposed effluent limitations;
>
> (3) *A brief description of any other proposed special conditions* which will have a significant impact upon the discharge.
>
> (c) *A statement of the basis for each* of the permit conditions listed in Section 309.108(b)." (Emphasis added.) (35 Ill. Adm. Code §309.108(b)(1), (b)(2), (b)(3), (c) (1988).)

The substantive conditions proposed in the U.S. EPA's final comment

letter were not included in the initial tentative determination nor in any of the draft permits. Therefore, Sauget and Monsanto had no notice of the proposed conditions and were not apprised of the basis for each of the same until after the close of the public comment period. We find that based on the foregoing, Sauget and Monsanto were denied the right to submit comments on the proposed conditions and otherwise participate in the permit process.

SUFFICIENCY OF HEARING BEFORE THE POLLUTION CONTROL BOARD

Appellees submit that even if we find that the IEPA and the U.S. EPA did not comply with the regulations cited above, Monsanto was afforded due process and is not entitled to the remedy it seeks on appeal. Appellees cite the Pollution Control Board's order of December 15, 1988, in support of their claim:

"The Board finds that whatever procedural due process deficiencies may arguably have existed at the Agency level in this proceeding are now corrected by the proceeding before the Board. The Board proceeding included adversarial hearings including cross examination of all relevant information relied upon by the Agency in making its permitting decision. To remand this proceeding back to the Agency would prove useless in terms of the inherent delay when due process has been afforded through subsequent proceedings at the Board level."

■ While the IEPA is bound to follow its own procedures and practices (*Harris-Hub Co. v. Pollution Control Board* (1977), 50 Ill. App. 3d 608, 613, 365 N.E.2d 1071, 1075), the supreme court recognizes that the procedure before the IEPA has none of the characteristics of an adversary proceeding, and that the safeguards of a due process hearing are absent until the hearing before the Pollution Control Board. (*Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 70, 503 N.E.2d 343, 345.) The fallacy in this case of holding that any denial of due process at the agency level was corrected at the Board level is that the proceeding before the Board did not remedy Monsanto's inability to submit information during the public comment period or request a hearing concerning the additional permit conditions suggested by the U.S. EPA.

Appellees rely on this court's decision in *Peabody Coal Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 5, 344 N.E.2d 279, in arguing that a due process hearing before the Board satisfies the requirements of due process. Appellees argue that the petitioners in *Peabody*, like the appellants herein, were not entitled to a *full dress* due process hearing before the IEPA prior to the effective date of the

final permit. While this court in *Peabody* acknowledged that a due process hearing is not required on the question of whether an applicant for a statutory entitlement should receive that which he requests, the petitioners in that case were permitted to submit oral and written comments at the agency level so that the record before the Board was complete. In the case at bar Monsanto was denied an effective opportunity to submit information during the public comment period because of the U.S. EPA's failure to file its comments within the appropriate time and its failure to provide Monsanto with copies of them.

■■ ■ The law is clear that in reviewing any condition of a permit issued by the IEPA, the decision of the Board shall be based exclusively on the record before the IEPA unless the parties agree to supplement the record. (Ill. Rev. Stat. 1989, ch. 111½, par. 1040(d).) This is in accordance with the Board's orders of September 22, 1988, and October 6, 1988, wherein the Board held:

> "[The] record should exclusively comprise those facts in possession of the Agency [IEPA] on or before the date it issued the disputed permit, and it is exclusively on such a record that the Board desires to base its ultimate decision."

If, as occurred .here, the parties are precluded from supplementing the record before the IEPA on such issues, this failure cannot be cured through the Board hearing because the scope of a Board hearing in a permit appeal is limited to the record developed before the IEPA. We find that the procedural safeguards to which Monsanto was due at the agency level were not afforded, and the proceedings before the Board did not cure this deficiency.

■■ In light of the procedural deficiencies at the agency level and the failure of the Board to cure the deficiencies, we deem it appropriate in this case to vacate the contested conditions in the AB Facility NPDES permit and to order the Board to direct the IEPA to issue a new draft permit. In view of our disposition we need not address the remaining issues raised by the appellants.

The order of the Illinois Pollution Control Board is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

RARICK, P.J., and WELCH, J., concur.