THE VILLAGE OF SWANSEA, Plaintiff-Appellant, *v.* THE COUNTY OF ST. CLAIR *et al.*, Defendants-Appellees.

Fifth District   No. 75-371

Opinion filed January 20, 1977.

John B. Gunn, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff Village of Swansea appeals from an order of the circuit court of St. Clair County denying its requested injunctive and declaratory relief. The plaintiff had sought an injunction against the defendant, County of St. Clair, to prevent the building and construction of a dog pound within the village of Swansea and a declaratory judgment that the county must comply with plaintiff's zoning, building, sewer, electrical and plumbing ordinances.

St. Clair County, in which the village of Swansea is located, owns approximately 25 acres of land within the boundaries of the village of Swansea. Prior to the events giving rise to this suit, the village of Swansea enacted, pursuant to statutory authority, various ordinances to regulate such governmental functions as zoning, sewer service, building, plumbing and electrical installations. In 1975, St. Clair County determined by vote to build a dog pound on its property within the village of Swansea, and a contract for such work was entered into with Erlinger Construction Company. However, after the county maintained that its construction did not have to comply with any of plaintiff's ordinances the instant suit was filed.

The proposed dog pound is to occupy approximately 1.6 acres and to contain a 4,260 square foot concrete block building with 40 dog kennels, offices, storage, a euthanasia chamber, waiting rooms, examination rooms and a garage for trucks. Dogs from all over the county would be brought to the facility in two trucks. If the dogs remained unclaimed, they would be killed in a gas chamber at the pound and then transported from the facility. The county proposes to build and staff the facility in conformance with the Animal Control Act (Ill. Rev. Stat. 1973, ch. 8, par. 351 *et seq.*).

The primary focus of the arguments in this case has concerned the Supreme Court decision in *City of Des Plaines v. Metropolitan Sanitary District*, 48 Ill. 2d 11, 268 N.E.2d 428. In *Des Plaines* the city brought a declaratory judgment action against the sanitary district in which the city sought to require the sanitary district to apply for and secure a special use permit from the city before the sanitary district could use the property it owned, located within the city limits, for water reclamation purposes. Relying on *Heft v. Zoning Board of Appeals*, 31 Ill. 2d 266, 201 N.E.2d 364, the trial court and the appellate court held that the sanitary district was required to abide by and conform to the zoning regulations of the city and therefore was required to secure a special use permit. The supreme court reversed on the basis that the sanitary district was acting pursuant to statutory authority:

"Section 8 of the Chicago Sanitary District Act (Ill. Rev. Stat. 1967, ch. 42, par. 327) provides that the sanitary district may

acquire ' * * * by condemnation within its corporate limits, any and all real and personal property, right of way and privilege that may be required for its corporate purposes.' The statute clearly authorized the taking of the property in question in the City of Des Plaines. To find that the condemnation power of the district is subject to the restrictions of local municipal zoning ordinances would be to relegate the authority of the district to that of a private land owner, and would thereby frustrate the purpose of the statute. If the district is exercising power within the statutory grant, such exercise is not subject to zoning restrictions imposed by the host municipality. However, as stated by the court in *Schiller Park* '* * * as is the case with other aspects of the eminent domain power, the courts will afford protection against any abuse thereof.' (26 Ill. 2d at 282.) Injunctive relief would be available where an exercise of power exceeds the statutory grant. Here it is not contended that there has been an abuse of power." 48 Ill. 2d 11, 14.

In this case the county is acting pursuant to the statutory mandate of the Animal Control Act (Ill. Rev. Stat. 1973, ch. 8, par. 351 *et seq.*). The purpose of the Act is stated in its title which reads as follows:

"AN ACT relating to stray animal control; rabies prevention; dogs pursuing, chasing, worrying, wounding, or killing domestic animals or poultry; the liability of a person owning or harboring a dog which attacks or injures a person; providing penalties for violations thereof; and to repeal Acts therein named."

This act mandates each county to carry out its separate provisions. For example, section 3 (Ill. Rev. Stat. 1975, ch. 8, par. 353) provides:

"The County Board shall appoint, as Administrator, a veterinarian licensed by the State of Illinois. Such appointments shall be made as necessary to keep this position filled at all times. The Administrator may appoint as many Deputy Administrators and Animal Control Wardens to aid him as authorized by the Board. The compensation for the Administrator, Deputy Administrators, and Animal Control Wardens shall be fixed by the Board for services other than for the rabies inoculation of dogs or other animals. The Administrator, Deputy Administrators, and Animal Control Wardens may be removed from office by the Board for cause.

The Board shall provide necessary personnel, equipment, supplies, and facilities, and shall operate pounds or contract for their operation as necessary to effectuate the program. The Board may enter into contracts or agreements with persons to assist in the operation of the program.

The Board shall be empowered to utilize monies from their General Corporate Fund to effectuate the intent of this Act.

The Board is authorized to require the registration of dogs and to impose a registration fee not to exceed $4 for each animal."

Section 5 (Ill. Rev. Stat. 1973, ch. 8, par. 355) also provides:

"It shall be the duty of the Administrator, through education, rabies inoculation, stray control, impoundment, quarantine, and any other means deemed necessary, to control and prevent the spread of rabies in his county. It shall also be the duty of the Administrator to investigate and substantiate all claims made under Section 19 of this Act.

The Administrator, Deputy Administrators, and Animal Control Wardens are, for the purpose of enforcing this Act, clothed with full police power. The sheriff and his deputies and municipal police officers shall cooperate with the Administrator in carrying out the provisions of this Act."

■■ Under the rule of *Des Plaines* we believe that the County of St. Clair does not have to abide by the zoning regulations of the village of Swansea. As is apparent from the above quotations, the Animal Control Act is a very broad measure designed to protect the health and safety of the people of this state through the control of stray animals. To require the county, which is statutorily mandated to carry out the terms of the Act, to submit to municipal zoning ordinances in implementing that statutory mandante would allow municipalities to frustrate the statutory program and contravene the intent of the legislature by utilizing zoning regulations to keep dog pounds out of their municipalities.

■■ Plaintiff contends that *Des Plaines* is distinguishable from the instant case because the power of eminent domain, which was at issue in that litigation, is not in question here. However, the court in *People ex rel. Scott v. North Shore Sanitary District*, 132 Ill. App. 2d 854, 270 N.E.2d 133, refused to read *Des Plaines* so narrowly. In *North Shore* the sanitary district was not required to abide by the zoning regulations of the city in constructing sewage facilities. In relying on the holding in *Des Plaines* the court noted that "[w]hether the property is acquired voluntarily or by eminent domain is not an appropriate distinction * * *." 132 Ill. App. 2d 854, 858.

■■ Plaintiff also seeks to avoid the application of the ruling in *Des Plaines* by arguing that the County of St. Clair has abused its power under the enabling legislation of the Animal Control Act. As quoted above, the *Des Plaines* opinion indicated that "[i]njunctive relief would be available where an exercise of power exceeds the statutory grant." (48 Ill. 2d 11, 14.) However, plaintiff measures the alleged abuse "by the number of

governmental functions of the Village which would be thwarted by the decision of the trial court." We think it is clear, however, that the frustration of municipal zoning ordinances, as in both *Des Plaines* and *North Shore*, cannot alone amount to an abuse of power within the protection afforded by *Des Plaines*. It is not the actual frustration of the ordinances which may amount to an abuse of power, but the manner in which they are frustrated. Thus, the more appropriate question here would concern the reasonableness or arbitrariness of the county's decision and the factors which the county considered in selecting the site. Our review of the record discloses no evidence which would point to an abuse of power even in this regard.

■■ Finally, plaintiff argues that article VII, section 6(c) of the Constitution of 1970, which is quoted below, indicates a preference for the village's ordinances in this situation:

"If a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction."

We think this argument is also without merit. While the section of article VII quoted above does express a clear preference for a municipal ordinance where there is a conflict with a home rule county ordinance, the conflict in the present case is between a municipal ordinance and a statutory grant of authority to a non-home-rule county. Accordingly, section 6(c) has no applicability.

For the foregoing reasons, we believe that defendant can build and operate its proposed pound despite the zoning ordinances of the plaintiff. However, we do not think that defendant can proceed in total disregard of plaintiff's building, sewer, electrical and plumbing ordinances. The *North Shore* and *Des Plaines* cases are limited to noncompliance with zoning ordinances; they do not purport to excuse compliance with building, sewer, electrical and plumbing ordinances. The distinction is obvious, for these latter ordinances are not by their very nature capable of thwarting the proposed building project. Rather, such ordinances as these are designed to promote public health and public safety. Thus, in line with our above conclusions, we believe defendant must comply with these ordinances unless such compliance interferes with defendant's functions under the Animal Control Act. Since there is insufficient evidence in the record on this latter point, we remand for hearing to determine whether or not compliance with building, sewer, electrical and plumbing ordinances would prevent defendant from carrying out the purposes of the Animal Control Act.

The judgment of the circuit court of St. Clair County denying plaintiff's requested injunctive and declaratory relief is accordingly affirmed with regard to plaintiff's zoning ordinance. With respect to the applicability of

plaintiff's other ordinances the judgment is reversed and the cause is remanded for hearing as directed above.

Affirmed in part, reversed in part and remanded with instructions.

CARTER, P. J., and EBERSPACHER, J., concur.