(No. 62258.—

WILMETTE PARK DISTRICT, Appellant, v. THE VIL-LAGE OF WILMETTE, Appellee.

*Opinion filed March 19, 1986.*

8

Michael W. Coffield, Richard A. Ungaretti, Charlene L. Holtz, Kevin M. Flynn and James J. Stamos, of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellant.

Robert J. Mangler, Vernon T. Squires and John P. Jacoby, of Wilmette, for appellee.

Fawell, James & Brooks, of Naperville (Gerald J. Brooks and Heidi H. Katz, of counsel), for amicus curiae Illinois Association of Park Districts.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., of Springfield, for amicus curiae Illinois Municipal League.

Kathryn L. Samuelson, of Mount Prospect, for amicus curiae Northwest Municipal Conference.

CHIEF JUSTICE CLARK delivered the opinion of the court:

This appeal requires us to determine whether a park

district, in exercising its statutory authority over the operation of its parks, is exempt from zoning ordinances of its host municipality. The parties are the Wilmette Park District (park district), organized and operating under the Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 1—1 *et seq.*), and the village of Wilmette (village), a home rule municipality. On March 29, 1984, the park district filed a complaint in the circuit court of Cook County for declaratory judgment, injunctive, and other relief. Specifically, the complaint requested the circuit court to find that the park district was not subject to the village's zoning ordinance and that it did not have to apply for a special use permit to install new lights on property known as the Village Green. The complaint also requested that the court declare null and void the village's revocation of an electrical permit that it issued to the park district to install lights on the Village Green. After a hearing based on the pleadings, memoranda of the parties, and argument by counsel, the court entered a declaratory judgment in favor of the park district. The appellate court reversed (134 Ill. App. 3d 657), and we granted the park district leave to appeal (94 Ill. 2d R. 315(a)).

This dispute involves two parcels of land which the park district recently consolidated to form a recreational area and park known as Howard Park. The parcel known as the Village Green has been owned by the village since 1921 and used as a recreational park for over 60 years, including lighted evening activities since 1946. In 1973, the park district obtained jurisdiction over the Village Green by lease after the village adopted an ordinance relinquishing all responsibility for recreation in Wilmette to the park district.

The Howard School was located on approximately six acres of land immediately east of the Village Green until it closed in 1979. After several public hearings and an

advisory referendum, the village, park district, and the Wilmette school board decided that the Howard School parcel would be best utilized if sold to the village. The village would, in turn, demolish the school and lease the site to the park district. The plan further envisioned that the park district would develop and then consolidate the Village Green and Howard School parcels to form the aforementioned enlarged recreational area, Howard Park.

On March 7, 1983, following the village's purchase of the Howard School parcel, the village and park district entered into a 30-year lease which cancelled the 1973 lease and included both the Howard School and Village Green parcels. Paragraph 6(a) of the 1983 lease incorporates a list of general improvements to be made by the park district at its expense and "as promptly as practicable," including "utilities and lighting" at an estimate of $48,000. The lease also provides in paragraph 6(b) that the park district could make other improvements without the consent of the village. However, paragraph 6(c) of the lease provides:

"This paragraph 6 is not intended to affect the obligations, if any, of either party from compliance with the requirements of the Zoning Ordinance of the Village of Wilmette."

In December 1982, the park district relocated the Village Green athletic fields in coordination with plans for the adjoining Howard School parcel. At this time, the existing lights for the athletic fields were removed to facilitate reconfiguration of the fields. In August 1983, the park district obtained from the village's director of community development an electrical permit to install replacement lighting for the Village Green athletic fields. The village maintains that its officials issued the electrical permit based upon representations by the park district that the proposed lights would be no more intense

or glaring than the lights they were to replace, and that none of the new lights would exceed 60 feet in height.

In October 1983, the village, as owner of the Howard School parcel, applied to its zoning board of appeals for a special use permit to allow the use to change from that of a public school to a recreational area. The zoning board hearing was scheduled for November 16, 1983. The park district denies the village's claim that the need for a special use permit for the Howard School parcel was made clear during preliminary discussions regarding the development of Howard Park. Matters complicated in the week before the zoning board hearing when the park district, relying on the previously issued electrical permit, substantially completed installation of the new lights. In fact, the completion of the wiring and alignment of the lights was the only work remaining before the lights would become operable.

The new installation included eight light towers ranging in height from 65.54 feet to 68.41 feet (compared to the original seven towers 60 feet in height), and supported a total of 52 fixtures with 1,000 watts in each luminaire. Five of the eight towers were relocated on the Village Green, and the remaining three new light towers were placed on the Howard School parcel.

The installation of the new lights generated a high level of community interest and concern. At the zoning board hearing on November 16, 1983, a large number of persons living near the park attended to voice opposition to the new lights. After the board chairman ruled that the testimony regarding lights on the Village Green could not be considered at a hearing on a special use application for the Howard School parcel, the zoning board voted to recommend to the village board of trustees that the special use permit should be granted for the Howard School parcel.

On December 6, 1983, the village board of trustees

decided that Howard Park should be treated as a single entity, rather than divided for zoning purposes, and that a new special use application covering the entire Howard Park should be filed so that the zoning board could properly consider the issue of the Village Green lights. The village filed a special use application for Howard Park in its entirety on December 23, 1983, and a hearing was scheduled for March 24, 1984. By letter dated March 8, 1984, the park district informed the village that it would not participate in the scheduled special use hearing. Subsequent efforts by park district and village officials to resolve the zoning conflict failed, and on March 20, 1984, the village revoked the electrical permit previously issued to the park district. Shortly thereafter, the park district filed this lawsuit.

We recognize the significant competing interests and statutory authority of the park district and the village. On the one hand, it is undisputed that the installation of lights at Howard Park is a proper park purpose under the Park District Code. (Ill. Rev. Stat. 1983, ch. 105, par. 8—1.) On the other hand, the Illinois Municipal Code authorizes all municipalities, home rule or otherwise, to adopt zoning ordinances which divide the *entire* municipality into zoning districts (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—1), and provides that special use categories may include public and quasi-public uses "affected with the public interest." (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—1.1.) This court has likewise determined that zoning and land-use planning are within the home rule power under section 6(a) of article VII of our Illinois Constitution. *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 516.

The Illinois Association of Park Districts, as *amici* for the park district, submits that when there is conflict between two units of local government, "the respective powers of each are to be given effect as fully as possible,

but one government unit may not enforce its laws so as to frustrate basic statutory purposes and functions of the other." The park district argues that it has and will be thwarted or frustrated in exercising its statutory obligation to maintain and operate its parks if it must comply with the village's zoning ordinance. The appellate court observed, however, that "there is nothing in the record before us showing that the village in the administration of its zoning law has to date in any way hampered, thwarted, or frustrated the park district in its statutory duty to maintain and operate parks." (134 Ill. App. 3d 657, 661.) The park district maintains that it has in fact been frustrated in its duty to operate parks because the revocation of the electrical permit for the Village Green lights prevented it from conducting planned evening events on the Village Green. Be that as it may, it is obvious the revocation of the electrical permit was a result or consequence of the park district's refusal to participate in the zoning process and not of its administration.

Neither the Illinois Municipal Code nor the Park District Code provides park districts with immunity from the zoning ordinances of their host municipality. Nevertheless, the park district takes the position that because the General Assembly has granted park districts authority to operate parks, it impliedly follows that the legislature intended to confer zoning immunity to park districts in instances where zoning may affect park operations.

We find no merit in this argument. The General Assembly has not granted park districts the exclusive authority to operate parks. Indeed, all municipalities, home rule or otherwise, are authorized to establish and operate parks. (Ill. Rev. Stat. 1983, ch. 24, pars. 11—98—1 through 11—100—1.) Absent an explicit statutory grant of immunity, the mere fact that the park district, a local unit of government, has a statutory duty to operate its

parks cannot be extended to support the inference that it can exercise its authority without regard to the zoning ordinances of its host municipality.

The park district contends that the appellate court's decision, that the park district must comply with the village's zoning ordinance, radically alters the status of independent park districts and concurrent municipal governments in contravention to all prior case law. Specifically, the park district cites a number of cases in support of the proposition that a park district is to be cloaked with a broad shield of immunity from the zoning ordinances of its host municipality. (*Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469; *City of Des Plaines v. Metropolitan Sanitary District* (1971), 48 Ill. 2d 11; *Decatur Park District v. Becker* (1938), 368 Ill. 442; *Village of Swansea v. County of St. Clair* (1977), 45 Ill. App. 3d 184.) We note, however, that none of the cases relied upon for this proposition involve the narrow issue presented here: whether a park district, in exercising its statutory function, is exempt from the zoning ordinance of its host municipality which does not prohibit the park district's use of the land in question, but does require that such use be the subject of a special use permit. As such, we find no merit in the park district's argument that the decision of the appellate court has "implicitly reversed" all, or in fact any, of these cases.

Lastly, the park district argues that the appellate court's holding is grounded upon an erroneous application of its own earlier decision in *Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, *aff'd sub nom. Clement v. Chicago Park District* (1983), 96 Ill. 2d 26. In *Clement*, the Chicago Park District began construction of a golf driving range in Jackson Park without the prior approval of the Chicago Plan Commission as required by the city's Lake Michigan and Chicago Lakefront Protection Ordinance. A citizen group sued to enforce the ordi-

nance requirement. On appeal, the appellate court found the ordinance to be in direct conflict with section 11–12–4.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11–12–4.1), which is applicable only to municipalities having a population greater than 500,000. The latter section provides that a planning commission's negative report concerning a proposed change cannot bar the change.

Finding that the ordinance should be read *"in pari materia"* with section 11–12–4.1 to encourage intergovernmental cooperation, the appellate court held that the Chicago Park District would have to comply with the ordinance to the extent that it did not interfere with its statutory purpose in maintaining its parks. In the court's view, the interests of intergovernmental cooperation required the Chicago Park District to submit its application to the Chicago Plan Commission for nonbinding review. This court affirmed, finding that the plaintiffs, as private parties, lacked standing to challenge the Chicago Park District's alleged noncompliance with the Lakefront Protection Ordinance. *Clement v. Chicago Park District* (1983), 96 Ill. 2d 26, 31-32.

The park district claims that the appellate court applied *Clement v. O'Malley* in a manner diametrically opposed to the result reached there. We disagree and find that this contention reflects the park district's own misconception of the facts and issues of *Clement.* Remarkably, the park district states in its brief that the *Clement* court did not require submission of the park district plan as a means of cooperation, but instead "held that the plan was to be submitted to the Plan Commission specifically because a state statute, [section 11–12–4.1 of the Illinois Municipal Code], required that it be submitted for a non-binding review. Absent that statute, the court would not have required submission of the plan." The park district brief then propounds that because section

11—12—4.1 is inapplicable in the instant case, there is no basis to require the park district to comply with the village's zoning ordinance. Inasmuch as this last proposition rests upon a gross misinterpretation of the appellate court's holding in *Clement*, it too is without merit.

We believe that the appellate court here correctly concluded that a special use hearing is the best possible way to reconcile the competing interests of the park district and village and that, in so doing, the court properly applied the intergovernmental-cooperation concept expressed in *Clement*. As the appellate court noted, the means for achieving cooperation between independent units of local government having competing interests or overlapping responsibilities cannot be reduced to a rigid mathematical formula. Each case must be decided on its particular facts.

The relationship between the proposed park district projects and their potential impact on nearby land distinguishes the present case from the situation in *Clement*. In *Clement*, the Chicago Park District was required to submit its plan to the Chicago Plan Commission for its opinion, even though the golf driving range would have little or no impact on surrounding property. Unlike the golf driving range in *Clement*, the appellate court observed, and we agree, that "the new lights on the Village Green may well impact on the surrounding residents' enjoyment of their property, depending on the height and intensity of the lights and their hours of use." 134 Ill. App. 3d 657, 663.

This court has recognized that a municipality has a legitimate interest in the potential impact that nighttime open-air sports programming may have on its surrounding neighborhood. (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 371.) The instant case potentially involves a material expansion of lighted activities at Howard Park during the nighttime

hours. The village's zoning ordinance requires a special use permit for the conversion from nonpark use to park use or where there is an expansion of park use. Because the instant case involves potentially significant expansion of a park, which is a special use, a special use hearing is both necessary and desirable.

Illinois case law has long acknowledged the statutory basis of the park district as an independent body charged with the responsibility of managing its parks. (*West Chicago Park Commissioners v. City of Chicago* (1894), 152 Ill. 392, 405; *Chicago Medical Society v. South Park Commissioners* (1909), 150 Ill. App. 564, 566.) However, the village's interest in this case does not originate from a desire to "manage" park land or projects, but rather from its legitimate interest and authority in planning and regulating the use of land within the entire community to minimize abrasive activities and promote use consistent with the community character and expectations of its residents.

The interests of the village and the park district in the present case will be best reconciled by the process visualized by the appellate court: the park district can participate in a special use hearing on its Howard Park plans. As the park district even concedes, the record before this court amply demonstrates the extensive cooperation between the park district and village for the last 75 years, up to and including their cooperation in developing plans for the improvement of the Village Green. For all that anyone knows, the village board may well grant a special use permit on terms satisfactory to the park district. In that event, the parties will be able to work out the completion of Howard Park on a cooperative basis, all to the benefit of the community which both government units serve.

Intergovernmental cooperation is, of course, a two-way street. We are mindful that only so long as the vil-

lage zoning ordinance is established and administered reasonably, and legal recourse is available if this is not the case, will the parties be well served by their participation in a special use hearing. Should the village administer its zoning ordinance in an unreasonable, arbitrary, or discriminatory manner in denying the park district a special use permit or otherwise abuse its zoning power to thwart or frustrate the park district's statutory duties, its actions will be subject to further judicial review.

We took two motions under advisement with this case. The first motion was filed by the park district to supplement the record on appeal with the affidavit of its director of parks and recreation, Terrance C. Porter. The village objects to the park district's motion on two grounds. First, the village argues that the statements in the tendered affidavit are testimonial and evidentiary in nature and, therefore, may not be properly considered by this court on appeal. Second, the village claims that some of the statements in the tendered affidavit are untrue.

To the extent that the proposed affidavit relates to facts occurring prior to the filing of the park district's complaint, such facts could have and should have been presented in an evidentiary hearing at the trial court level. Ironically, it was the park district that insisted upon an expedited resolution of the legal issue presented and to this end successfully persuaded the trial court that no material factual dispute existed requiring an evidentiary hearing. Conversely, to the extent that the proposed affidavit relates to events occurring after entry of the appellate court's decision, such events are obviously outside the record and the scope of this court's review on appeal. Therefore, we deny the park district's motion to supplement the record.

The second motion was filed by the village and requests this court to strike a portion of the park district's

reply brief as containing assertions of fact not contained in the record. In view of our decision on the legal issue in this case, the village's motion is denied as moot.

For the reasons stated, the judgment of the appellate court is affirmed.

*Motions denied;*
*judgment affirmed.*