THE CITY OF EVANSTON, Plaintiffs-Appellants and Cross-Appellees, v. REGIONAL TRANSPORTATION AUTHORITY *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)   No. 1—89—0545

Opinion filed August 15, 1990.

Jack M. Siegel, of Chicago, for appellants.

Burke, Bosselman & Weaver, of Chicago, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:
At dispute in this appeal and cross-appeal is the proposed building of a bus garage and maintenance facility in the City of Evanston by the Regional Transportation Authority (RTA) and its suburban bus division, PACE. Plaintiffs, Evanston, Joan W. Barr, Ann Rainey, and Norris Larson (hereinafter referred to collectively as Evanston), appeal from the granting of summary judgment on count I of RTA's and PACE's second amended counterclaim which asserted that they were exempt as regional transportation agencies from Evanston's zoning. Evanston also argues on appeal that the trial court erred in permitting the second amended counterclaim to be amended to delete reference to the North Suburban Mass Transit District (Nortran), the agency that provided bus service on behalf of PACE in the northern suburbs and the proposed user of the facility, because Nortran was a necessary party. RTA and PACE cross-appeal from the dismissal of counts V through XI of their counterclaim which alleged a taking and damaging of their property in violation of the Federal and State constitutions, a denial of substantive due process and equal protection, and violations of section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)) based on this denial. RTA and PACE argue that the trial court erred in holding that, as political subdivisions, they lacked constitutional rights.

Evanston filed a complaint against RTA, PACE, National Steel Service Center, Inc. (National), and the Urban Mass Transportation

Administration for injunctive relief against any Federal financial assistance for the construction and operation of a bus maintenance facility in Evanston and against the consummation of the sale by National of property in Evanston to PACE. Plaintiffs alleged that pursuant to an Evanston zoning ordinance, such a facility located in zone M-4 required a special use permit. Defendants' motion to dismiss the complaint was granted.

RTA's and PACE's second amended counterclaim against Evanston alleged in count I that: RTA was a regional governmental body; PACE provided bus transportation for RTA and owned property in Evanston which was purchased for use as a bus storage and maintenance facility to house buses operated by Nortran; the property was located in M-4, Evanston's heaviest manufacturing classification; Evanston amended its zoning ordinance on March 10, 1986, to make bus storage and maintenance facilities prohibited without a special use permit; Evanston denied PACE a special use permit; PACE incurred damages because of its inability to use the property as planned; and RTA and PACE as regional governmental bodies and Nortran as a regional agency operating under an agreement with PACE were exempt from Evanston's zoning restrictions. RTA and PACE sought a declaratory judgment that they and Nortran could use the property for the proposed facility.

RTA and PACE alleged in counts III and IV that the rezoning ordinance and the denial of the permit, respectively, were arbitrary, capricious and invalid.

RTA and PACE alleged in count V that the following actions of Evanston were done for the illegal purpose of keeping the property on the city tax rolls and deprived PACE of its use of the property: passage of a resolution of condemnation; amendment of its zoning ordinance; filing of the Federal suit; requirement that PACE file, and present evidence in support of, an application for a special use permit; and denial of the application for a special use permit. It was further alleged that PACE had not been able to use the facility and that the deprivation was a taking and damaging of its property in violation of the fifth amendment to the United States Constitution and of section 2 of article I of the Illinois Constitution of 1970. PACE sought compensation for the taking and damaging.

RTA and PACE alleged in count VI that: the amendment of the zoning ordinance bore no rational relationship to any proper public purpose; the amendment was enacted to prevent PACE from using the property in order to keep the property on the city tax rolls; and, therefore, Evanston denied RTA and PACE substantive due process guaranteed by the fourteenth amendment to the United States Constitution

and by section 2 of article I of the Illinois Constitution of 1970.

RTA and PACE alleged in count VII that: the amended zoning ordinance bore no rational relationship to any proper public purpose; there was no rational distinction between bus storage and maintenance facilities and other uses permitted in the M-4 zoning district; Evanston intentionally discriminated against owners of publicly owned bus storage and maintenance facilities by treating such facilities differently than other similarly situated and more detrimental uses in the M-4 zoning district; and, therefore, Evanston had intentionally denied RTA and PACE equal protection of the laws guaranteed by the fourteenth amendment of the United States Constitution and by section 2 of article I of the Illinois Constitution of 1970. RTA and PACE sought a declaration that the zoning amendment was void and that PACE and RTA had the right to use the property as a bus facility.

RTA and PACE alleged in count VIII that: the denial of a special use permit bore no rational relationship to any proper public purpose; that Evanston intentionally discriminated against PACE by denying it a special use permit; and that Evanston had thereby intentionally denied RTA and PACE equal protection of the laws. They sought a declaration that the denial of a special use permit was void and that they had the right to use the property as a bus facility.

RTA and PACE alleged in count IX that: Evanston enacted the ordinance to prevent the use of the property as a bus facility so that the property would remain on the city tax rolls; RTA and PACE had a legitimate claim of entitlement to use the property as a bus facility; Evanston's intentional acts were conducted under the color of State law which authorized it to zone and classify uses; Evanston had a duty not to deprive RTA and PACE of the right to use the property as a bus facility; Evanston's actions directly and proximately caused RTA's and PACE's deprivation of their right to use the property as a bus facility; RTA and PACE suffered substantial damages as a result; and Evanston's actions violated RTA's and PACE's right to substantive due process preserved under the Civil Rights Act.

RTA and PACE alleged in count X that: Evanston enacted the ordinance to prevent the use of the property as a bus facility so that the property would remain on the city tax rolls; Evanston's intentional acts were conducted under the color of State law which authorized it to zone and classify uses; Evanston had the duty to treat RTA and PACE similarly and without unreasonable distinction from others similarly situated in the M-4 districts; Evanston's actions directly and proximately caused RTA's and PACE's deprivation of their right to equal protection; RTA and PACE suffered damage as a result; and

Evanston's actions violated RTA's and PACE's right to equal protection under the Civil Rights Act.

RTA and PACE alleged in count XI that: Evanston denied PACE a special use permit to prevent the use of the property as a bus facility so that the property would remain on the city tax rolls; Evanston's intentional acts were conducted under the color of State law which authorized it to zone and classify; Evanston had a duty to treat RTA and PACE similarly and without unreasonable distinction from others similarly situated in the M-4 district as well as from others operating similar facilities in Evanston; Evanston's actions directly and proximately caused RTA's and PACE's deprivation of their right to equal protection; RTA and PACE suffered damage as a result; and Evanston's actions violated RTA's and PACE's right to equal protection under the Civil Rights Act.

RTA and PACE moved for summary judgment on count I of the second amended counterclaim on the basis that as regional agencies they were not subject to Evanston's zoning ordinances. Attached to the motion was the affidavit of the head of the PACE operations department, who swore that the RTA was a regional governmental body created under and acting pursuant to the Illinois Regional Transportation Authority Act (RTA Act) (see Ill. Rev. Stat. 1987, ch. 111²/₃, par. 701.01 *et seq.*) and that RTA oversaw and provided public transportation in Cook, Kane, Du Page, Will, Lake and McHenry Counties and in hundreds of municipalities. She also swore that PACE was a regional governmental body created by and acting pursuant to the RTA Act which provided bus transportation on behalf of the RTA in these same counties. She also swore that the property purchased by PACE was located in the M-4 zoning classification, which was Evanston's heaviest manufacturing classification, and that PACE and RTA had been prevented from using the property for its intended use by the amendment to the zoning ordinance.

RTA and PACE moved for leave to amend the second amended counterclaim by deleting reference to Nortran. They argued that Nortran would not necessarily be a user of the bus facility, that Nortran had no ownership or other interest in the property, and that Nortran's contract with PACE extended only until December 1989 at which time PACE could choose to provide bus service itself or to purchase service from a different transportation agency. RTA and PACE argued that, therefore, any reference to Nortran was superfluous and that Nortran was not a necessary party.

The trial court granted the motion to amend the second amended counterclaim to delete references to Nortran, dismissed with prejudice

counts V through XI, granted defendants' motion for summary judgment on count I, dismissed count II without prejudice, and denied the motion to dismiss counts I, III and IV. With respect to the rulings on the dismissal of counts V through XI and the granting of summary judgment on count I, Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) language was included in the order.

Evanston appeals from the order granting summary judgment on count I in RTA's and PACE's favor, and argues that RTA and PACE were subject to Evanston's zoning ordinance because zoning and land use planning are within its home rule powers. It also argues that if the legislature intended to give a regional authority immunity from local zoning restrictions, then a specific statutory exemption or immunity had to be provided and that no such exemption was provided in the RTA Act.

■ Prior to the adoption of home rule in the Illinois Constitution of 1970, a municipal corporation could only exercise those powers granted by the legislature, incident to those granted powers, or essential to the accomplishment of the purposes of the corporation. (*Marshall Field & Co. v. Village of South Barrington* (1981), 92 Ill. App. 3d 360, 362, 415 N.E.2d 1277.) Legislative grants of authority by the State to local government were to be strictly construed. *Marshall Field*, 92 Ill. App. 3d at 362.

■ The Illinois Constitution of 1970 provides that any municipality of over 25,000 population or any county with an elected chief executive officer is a home rule unit. (Ill. Const. 1970, art. VII, §6(a).) Except as limited in the Illinois Constitution, a home rule unit may "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, §6(a).) Counties and municipalities which are not home rule units only have the powers granted to them by law and certain enumerated powers. Ill. Const. 1970, art. VII, §7.

■■ The Illinois Constitution of 1970 further provides that the General Assembly may deny or limit any power or function of a home rule unit not exercised or performed by the State (with two exceptions) by a law approved by three-fifths of the members of each house. (Ill. Const. 1970, art. VII, §6(g).) The General Assembly also has the power to provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit (other than particular exceptions). (Ill. Const. 1970, art. VII, §6(h).) Home rule units may exercise and perform concurrently with the State any power or function of a

home rule unit to the extent that the General Assembly does not limit the concurrent exercise or specifically declare the State's exercise to be exclusive. (Ill. Const. 1970, art. VII, §6(i).) Powers and functions of home rule units are to be construed liberally. Ill. Const. 1970, art. VII, §6(m).

In *City of Des Plaines v. Metropolitan Sanitary District of Greater Chicago* (1971), 48 Ill. 2d 11, 268 N.E.2d 428 (*Des Plaines I*), relied upon by RTA and PACE in their argument that they are not subject to Evanston's zoning, the sanitary district purchased land in Des Plaines upon which to construct a water reclamation plant. The sanitary district was comprised of seven local governmental units. The site was not zoned for this proposed use, and the sanitary district did not apply for a zoning variation. The issue was whether the city's zoning ordinance applied to the sanitary district's statutory power of eminent domain. The court held that the sanitary district's taking of property pursuant to statutory power was not subject to the city's zoning restrictions and that to so subject the condemnation power would relegate the sanitary district's authority to that of a private land owner and would frustrate the statutory purpose. (*Des Plaines*, 48 Ill. 2d at 14.) The effect of a municipality's home rule status upon its ability to subject a regional facility to its zoning laws was not an issue.

Des Plaines subsequently filed an action which sought substantially the same relief as its original complaint, *i.e.*, a declaratory judgment that its zoning ordinance applied to the sanitary district's property. (*City of Des Plaines v. Metropolitan Sanitary District of Greater Chicago* (1974), 59 Ill. 2d 29, 319 N.E.2d 9 (*Des Plaines II*).) Unlike *Des Plaines I*, the city now alleged that it was a home rule municipality. The court held that *res judicata* applied to bar the second cause of action because the same cause, issues, parties, and relief as in the original cause of action were involved. (*Des Plaines*, 59 Ill. 2d at 31-32.) The court stated in the context of a discussion of the applicability of *res judicata* that the fact that the city's power to enact a zoning ordinance now stemmed from the Constitution rather than from a grant of authority by the General Assembly was irrelevant. (*Des Plaines*, 59 Ill. 2d at 31.) The effect of a municipality's home rule status upon its ability to subject a regional facility to its zoning laws was not directly addressed.

In a third Des Plaines case, the city sought to enjoin the sanitary district from constructing a sewage treatment plant within the city unless the sanitary district obtained a city permit and complied with a city health ordinance. (*Metropolitan Sanitary District of Greater Chicago v. City of Des Plaines* (1976), 63 Ill. 2d 256, 347 N.E.2d 716 (*Des*

*Plaines III*).) The sanitary district had already obtained a permit from the Illinois Environmental Protection Agency (Illinois EPA) for the sewage treatment plant and it refused to also apply for a city permit. The sanitary district argued that environmental regulation of sewage treatment plants was a statewide concern, did not pertain to the government and affairs of a home rule unit and, alternatively, that environmental regulation was preempted by the Illinois Environmental Protection Act.

*Des Plaines III* held that the application of the city ordinance to a regional sewage treatment plant was not within the grant of home rule power. (*Des Plaines*, 63 Ill. 2d at 260.) The court noted that the plant would serve six other municipalities which were either home rule units or eligible to become home rule units. (*Des Plaines*, 63 Ill. 2d at 260-61.) The court stated that its "fundamental difficulty" was that to permit a regional district to be regulated by a part of that region was incompatible with the sanitary district's purpose. *Des Plaines*, 63 Ill. 2d at 261.

*Des Plaines I* was held to be dispositive in *People ex rel. Scott v. North Shore Sanitary District* (1971), 132 Ill. App. 2d 854, 857-58, 270 N.E.2d 133, which held that a sanitary district was not required to obtain from a city a special use permit for expansion of its sewage treatment facilities. *Village of Swansea v. County of St. Clair* (1977), 45 Ill. App. 3d 184, 187, 359 N.E.2d 866, held that to require the county, which was statutorily mandated to carry out the terms of a State animal control act, to comply with municipal zoning ordinance would permit municipalities to frustrate the statutory program. (*Swansea*, 45 Ill. App. 3d at 187.) But the issue of home rule power was not discussed in *Scott* or in *Swansea*. It was held in *City of Highland Park v. County of Cook* (1975), 37 Ill. App. 3d 15, 26, 344 N.E.2d 665, that it was not within a city's home rule power to enact an ordinance requiring city approval for construction of a county road.

A privately owned garbage disposal site which had a State permit was held subject to a home rule county's zoning ordinance in *Carlson v. Briceland* (1978), 61 Ill. App. 3d 247, 252, 377 N.E.2d 1138, because the zoning and regulation of garbage disposal pertained to a home rule unit's local affairs. The court noted that pollution from the site would be localized, that no local municipality within the county was attempting to regulate the county as in *Des Plaines III*, that the site was within the home rule unit's boundaries, and that there was at most a negligible extraterritorial effect. *Carlson*, 61 Ill. App. 3d at 251.

The supreme court similarly held in *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 517, 389 N.E.2d 553, that a pri-

vately owned landfill with an Illinois EPA permit had to conform to the zoning ordinance of the home rule county in which it was located. Although the landfill was to be used by surrounding communities, it was not the case of a regional governmental district seeking to create a facility to serve a specific region with a part of that region attempting to regulate the facility. (*Sexton*, 75 Ill. 2d at 510.) Regulation of sanitary landfills was within the county's home rule power. *Sexton*, 75 Ill. 2d at 511.

In *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6, 13-15, 490 N.E.2d 1282, the court held that a park district in exercising its statutory authority over the operation of a park located within a village was not exempt from the village's zoning ordinances and that land-use planning was within the village's home rule powers.

■ We hold that under *Des Plaines III*, the application of the Evanston zoning ordinance to the regional bus facility was not within the grant of home rule power. A similar incompatibility exists in part of a region regulating a bus facility which is to serve a region and is operated by a regional governmental authority. The trial court properly granted summary judgment in favor of RTA and PACE on count I.

■ Evanston also appeals from the granting of the motion to amend the second amended counterclaim to delete references to Nortran. Evanston argues that Nortran was a necessary party. But an order permitting the amendment of a pleading is not a final order which finally determines the parties' rights regarding issues so that, if affirmed, the court would only have to proceed to execution of the judgment. (See *Gutenkauf v. Gutenkauf* (1979), 69 Ill. App. 3d 871, 873, 387 N.E.2d 918 (order granting motion to dismiss and permitting plaintiff to file an amended complaint was not final).) An order which leaves a cause still pending and undecided is not a final order. (*Gutenkauf*, 69 Ill. App. 3d at 873.) This court therefore has no jurisdiction over the issue whether the trial court erred in permitting the amendment of the second amended counterclaim because some of the counts were still pending.

RTA and PACE appeal from the trial court's dismissal of counts V through XI of their second amended counterclaim which asserted constitutional claims against Evanston. They assert that the trial court erred in holding that they had no constitutional rights. The issues presented are: (1) is a political subdivision of the State such as the RTA and PACE protected under the Illinois and United States constitutions from the taking of its property by another political subdivision; and (2) does such a political subdivision have the rights to due process and equal protection under the Illinois and United States constitutions?

Evanston first argues that the taking clauses do not apply because RTA's and PACE's property was not private. The RTA Act provides that the RTA is "a unit of local government, body politic, political subdivision and municipal corporation." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 701.04), and PACE was allegedly the suburban bus division of the RTA. The fifth amendment states in part that "nor shall private property be taken for public use, without justification." (U.S. Const., amend. V.) Section 15 of article I of the Illinois Constitution of 1970 similarly provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law." Ill. Const. 1970, art. I, §15.

■ It has been held that the reference to private property in the fifth amendment encompassed the property of State and local governments when condemned by the United States (*United States v. 50 Acres of Land* (1984), 469 U.S. 24, 31, 83 L. Ed. 2d 376, 383, 105 S. Ct. 451, 455-56), but there is no authority that private property within the meaning of the fifth amendment includes the public property of a political subdivision taken by another political subdivision of the same State. RTA's and PACE's property was public property that was not protected by the United States Constitution's just compensation clause.

■ A school district's constitutional challenge to a State act which permitted the detachment of a school district's property as a taking was denied on the basis that the property of a public municipal corporation was subject to the will of the legislature in *People ex rel. Taylor v. Camargo Community Consolidated School District No. 158* (1924), 313 Ill. 321, 324-25, 145 N.E. 154. RTA's and PACE's property was not subject to Evanston's control, but we hold that it was nevertheless public property that was not protected by the Illinois Constitution's just compensation clause.

RTA and PACE next argue that a municipal corporation is a person within the meaning of the fourteenth amendment and has the rights to substantive due process and equal protection. RTA and PACE are challenging another subdivision's exercise of its zoning powers and the applicability of its zoning ordinance; they are not challenging a State statute or other State action. Most of the cases cited by Evanston are therefore distinguishable because they hold that a political subdivision of a State may not challenge the validity of a State statute under the fourteenth amendment whether the defendant is the State itself or another of the State's political subdivisions. (*City of New Orleans v. New Orleans Water Works Co.* (1891), 142 U.S. 79, 91, 35 L. Ed. 943, 947, 12 S. Ct. 142, 147; *Village of Riverwoods v. Department*

*of Transportation* (1979), 77 Ill. 2d 130, 136, 395 N.E.2d 555; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578, 284 N.E.2d 266; *Supervisors of County of Boone v. Village of Rainbow Gardens* (1958), 14 Ill. 2d 504, 507-08, 153 N.E.2d 16; *Village of Arlington Heights v. Regional Transportation Authority* (7th Cir. 1981), 653 F.2d 1149, 1151-53; *Akron Board of Education v. State Board of Education* (6th Cir. 1974), 490 F.2d 1285, 1297-98 (concurring and dissenting opinion).) See also *City of South Lake Tahoe v. California Tahoe Regional Planning Agency* (9th Cir. 1980), 625 F.2d 231, 233 (city cannot challenge regulations of State political subdivision).

■ The reasoning behind these decisions, derived primarily from early United States Supreme Court cases, is that a political subdivision of the State has no rights under the United States Constitution which it may invoke in opposition to its creator, the State. See *City of Newark v. New Jersey* (1923), 262 U.S. 192, 196, 67 L. Ed. 943, 946, 43 S. Ct. 539, 540 (the regulation of municipalities is within the domain of the State so that city could not invoke the protection of the fourteenth amendment against the State); *City of Trenton v. New Jersey* (1923), 262 U.S. 182, 187, 192, 67 L. Ed. 937, 941, 943, 43 S. Ct. 534, 537, 538 (municipal corporation is merely a department of the State which may withhold, grant or withdraw powers and privileges as it sees fit so that city could not attack State act as violative of due process and fifth amendment).

RTA and PACE argue that the need to protect the sovereignty of the State from the subdivisions it created is not relevant here because the RTA and PACE are not creatures of the City of Evanston and do not derive their powers from it. But even though RTA and PACE are not the political subdivisions of Evanston, political subdivisions of States are not persons protected by the United States Constitution. (See *Pennsylvania v. New Jersey* (1976), 426 U.S. 660, 665, 49 L. Ed. 2d 124, 129, 96 S. Ct. 2333, 2335 (people and not States are protected by the privilege and immunities and the equal protection clauses); *South Carolina v. Katzenbach* (1966), 383 U.S. 301, 323-24, 15 L. Ed. 2d 769, 784, 86 S. Ct. 803, 816 (States are not protected by fifth amendment's due process clause); *Commonwealth Edison Co. v. Department of Local Government Affairs* (1984), 126 Ill. App. 3d 277, 291, 466 N.E.2d 1351 (municipal governmental entities are not protected by fourteenth amendment's due process and equal protection clauses); *Franciscan Hospital v. Town of Canoe Creek* (1979), 79 Ill. App. 3d 490, 496-97, 398 N.E.2d 413 (municipal corporations are not protected by fourteenth amendment); *People v. Valentine* (1977), 50 Ill. App. 3d 447, 452, 365 N.E.2d 1082 (municipal governmental entities

are not protected by fourteenth amendment); *South Macomb Disposal Authority v. Township of Washington* (6th Cir. 1986), 790 F.2d 500, 505 (fourteenth amendment does not impose restrictions upon one political subdivision *vis-a-vis* another political subdivision); *Town of Ball v. Rapides Parish Police Jury* (5th Cir. 1984), 746 F.2d 1049, 1051 n.1 (a municipal corporation cannot invoke the fourteenth amendment against another subdivision of the State); *El Paso County Water Improvement District No. 1 v. International Boundary & Water Comm'n* (W.D. Texas 1988), 710 F. Supp. 121, 123-24 (political subdivision of State could not make challenge that Federal agency deprived it of its property without due process); *City of Sault Ste. Marie v. Andrus* (D.C. 1980), 532 F. Supp. 157, 167-68 (city is not protected by fifth amendment).

To the contrary is *Ohio Student Loan Comm'n v. Cavazos* (S.D. Ohio 1988), 709 F. Supp. 1411, 1422, which held that a State student loan commission was not the alter ego of the State and therefore was a person under the fifth amendment. But this holding may have been *dicta* because the court invalidated the implementation of a Federal statute as unconstitutional under another constitutional prohibition. In addition, the case was reversed, although the reviewing court did not decide whether the loan commission was a person. *Ohio Student Loan Comm'n v. Cavazos* (6th Cir. 1990), 900 F.2d 894. See also *In re Real Estate Title & Settlement Services Antitrust Litigation* (3d Cir. 1989), 869 F.2d 760, 765 n.3 (school boards were persons within the meaning of the fifth amendment's due process clause because they were not the alter ego of the State); *Township of River Vale v. Town of Orangetown* (2nd Cir. 1968), 403 F.2d 684, 686 (court held that a municipal corporation which challenged the action of a town of a different State was a person within the meaning of the fourteenth amendment, but *Aguayo v. Richardson* (2d Cir. 1973), 473 F.2d 1090, 1098-1101, may have implicitly overruled this holding because it held that a city could not challenge State action and statutes under the equal protection and due process clauses).

■■■ The reasoning that political subdivisions have only those rights which are conferred on them by the State applies logically to challenges brought under the United States Constitution by political subdivisions not only to State statutes or other State action but to the action of other political subdivisions. (See *South Macomb Disposal Authority v. Township of Washington* (6th Cir. 1986), 790 F.2d 500, 505 (fourteenth amendment does not impose restrictions upon one political subdivision *vis-a-vis* another political subdivision).) We therefore hold that the RTA and PACE did not have fourteenth amendment rights.

RTA and PACE argue that municipalities have been permitted to challenge the zoning of another municipality under the Illinois Constitution of 1970, but the cases they cited concerned a municipality's standing to challenge zoning and did not determine whether political subdivisions had constitutional rights. *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 410 N.E.2d 37; *City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305; *Village of Northbrook v. County of Cook* (1984), 126 Ill. App. 3d 145, 466 N.E.2d 1215; *City of West Chicago v. County of Du Page* (1979), 67 Ill. App. 3d 924, 385 N.E.2d 826; *Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 309 N.E.2d 763.

■■ It has been held that a municipal corporation cannot make due process claims under the Illinois Constitution of 1970 against action of the State government because of the State's legislative supremacy. *Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 136, 395 N.E.2d 555; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578, 284 N.E.2d 266; *Supervisors of County of Boone v. Village of Rainbow Gardens* (1958), 14 Ill. 2d 504, 507, 153 N.E.2d 16; *People v. Valentine* (1977), 50 Ill. App. 3d 447, 452-53, 365 N.E.2d 1082; *Village of Arlington Heights v. Regional Transportation Authority* (7th Cir. 1981), 653 F.2d 1149, 1151-53 (also rejected was an argument that home rule units were no longer creatures of the State legislature).

■■ It has also been held that the Illinois Constitution's due process clause does not apply to municipalities because constitutions are contracts between the sovereign and its people and because due process rights were specifically guaranteed to the individual and not to the sovereign or the municipality which is its subsidiary. (*Village of North Pekin v. Riviere* (1979), 73 Ill. App. 3d 1032, 1033, 392 N.E.2d 439.) We adopt this reasoning to hold that the RTA and PACE lacked rights to substantive due process and equal protection under the Illinois Constitution of 1970.

The judgment of the circuit court is affirmed.

Affirmed.

RIZZI and FREEMAN, JJ., concur.