THE CITY OF JOLIET, Plaintiff-Appellant, v. DONALD N. SNYDER, JR., Director of the Department of Corrections, *et al.*, Defendants-Appellees.

Third District    No. 3—00—0230

Opinion filed December 19, 2000.

Jeffrey Plyman (argued) and Timothy Placher, Assistant Corporation Counsel, of Joliet, for appellant.

James E. Ryan, Attorney General, and Steven M. Puiszis, Stephen R. Swofford (argued), and J. William Roberts, all of Hinshaw & Culbertson, both of Chicago, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff City of Joliet (City) brought this action against defendants Donald N. Snyder, Jr., Linda Renee Baker and Ray Mota, all named in

their official capacities (collectively State), seeking a declaratory judgment that the State is required to seek a permit under a City zoning ordinance before renovating a detention facility to house sexually violent persons. The City also sought an injunction to stop the State from continuing its renovations and a *mandamus* to force the State to apply for a permit. The trial court granted the State's motion to dismiss. We affirm and hold that a municipality may not force the State to abide by a zoning ordinance requiring the State to apply for a special permit where the State is carrying out a statutory duty encompassing a statewide concern.

## FACTS

In 1997, the City amended a local zoning ordinance to prohibit correctional centers and detention facilities in industrial zoning districts unless specifically approved through the issuance of a special use permit following public notice and a hearing. See Joliet Code of Ordinances, No. 8730, §§ 47—14.2A, 47—14.3 (amended 1997). In early February of 2000, the City learned through press reports that the Illinois Department of Human Services (DHS), the Illinois Department of Corrections (DOC) and the Capital Development Board (CDB) were spending over $500,000 to renovate the Joliet Annex for use in housing sexually violent persons under the Sexually Violent Persons Commitment Act (Commitment Act) (725 ILCS 207/1 *et seq.* (West 1998)).

The Joliet Annex was built in 1895 and served as a women's prison until 1933. It was then converted to a prison for men and also served as DOC's reception and diagnostic center until 1972. The Joliet Annex was than used for administrative purposes until 1979, when it was renovated. It was reopened in 1981 and again served as DOC's reception and diagnostic center. The Joliet Annex currently sits in an industrial zoning district.

The Commitment Act provides for the civil commitment of persons found to possess a mental disorder that predisposes such persons to commit acts of sexual violence. 725 ILCS 207/5, 10 (West 1998). A person committed under the Commitment Act is placed in the care and custody of DHS. 725 ILCS 207/40 (West 1998). These persons are committed to secure facilities operated by DHS and provided by DOC. 725 ILCS 207/50 (West 1998). DHS must provide by rule for the nature of the facility, the level of care to be provided and the custody and discipline of persons in the facility. 725 ILCS 207/50 (West 1998).

Upon learning of the State's plans, City officials notified various State officials that the proposed facility was no longer permitted as of right in the industrial zone in which it was located and that the State

would have to apply for a special use permit. When the State refused to apply for a permit, the City filed an action in the circuit court seeking a declaration that the State was required to comply with the special use procedures set forth in sections 47—14.2A and 47—14.3 of the Joliet zoning ordinance.[1] See Joliet Code of Ordinances, No. 8730, §§ 47—14.2A, 47—14.3 (amended 1997). The suit also sought injunctive relief to prohibit the State from operating the facility and sought a writ of *mandamus* to force State officials to apply for the permit.

The trial court granted the State's motion to dismiss and the City appeals.

## ANALYSIS

Because the trial court dismissed the City's complaint based upon the doctrines of *laches* and equitable estoppel and for failure to prove the elements necessary for the issuance of an injunction, the court never determined whether the City has authority to force the State to abide by the City's zoning ordinance. Due to its dispositive nature, we turn first to this issue.

■ As the State correctly suggests, this court may affirm the trial court's judgment on any basis appearing in the record. *People v. Williams*, 143 Ill. 2d 477, 577 N.E.2d 762 (1991). The issue of whether the City may force the State to abide by its zoning ordinance is a question of law which we review *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

■ Under the Illinois Constitution of 1970, any municipality with a population over 25,000 is a home rule unit. Ill. Const. 1970, art. VII, § 6(a). A home rule unit may exercise any power and perform any function pertaining to its "government and affairs," including the power to regulate for the protection of the public health, safety, morals and welfare. The General Assembly has the power to provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit. Ill. Const. 1970, art. VII, § 6(h). The City of Joliet qualifies as a home rule unit.

■ Division 13 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11—13—1 *et seq.* (West 1998)) authorizes a municipality to adopt ordinances dividing the territory within its limits into various zoning districts and to establish standards within those zones to which structures and land uses shall conform. Section 11—13—1.1 of the

---

[1]Sections 47—14.2A and 47—14.3 provide that an adult detention facility and an institution of human care may be allowed in an I-2 zoning district only upon the granting of a special use permit or a variance by the corporate authorities of Joliet after notice and a public hearing. Joliet Code of Ordinances, No. 8730, §§ 47—14.2A, 47—14.3 (amended 1997).

Municipal Code (65 ILCS 5/11—13—1.1 (West 1998)) states that any municipality may provide in its ordinances passed under Division 13 for the classification of special uses and may include public and quasi-public uses "affected with the public interest." A special use shall be permitted after a public hearing and only upon evidence that such use meets standards established for such classification in the ordinances. 65 ILCS 5/11—13—1.1 (West 1998).

The City contends that it was pursuant to this statutory authority and to its home rule power that it adopted its zoning ordinance within which it classifies the City's territory into various zoning districts and regulates the use of land within those districts, including the creation or renovation of adult detention facilities on that land. The City surmises that because the Illinois legislature has expressly subjected public land uses to the special use permit process if required by a local zoning ordinance, the State must comply with the Joliet zoning ordinance before reopening the Joliet Annex. The State contends that it is not subject to the City's zoning ordinance because the housing of sexually violent persons does not concern the "government and affairs" of a home rule unit as provided by the Illinois Constitution of 1970. We agree.

In *Metropolitan Sanitary District of Greater Chicago v. City of Des Plaines*, 63 Ill. 2d 256, 347 N.E.2d 716 (1976), the City of Des Plaines sought to enjoin the Metropolitan Sanitary District from constructing a sewage treatment plant within the city unless the sanitary district obtained a city permit. The supreme court held that environmental regulation of a sewage treatment plant was a statewide concern and did not pertain to the "government and affairs" of a home rule unit within the meaning of article VII, section 6(a), of the Illinois Constitution. The court noted that the plant would serve six other municipalities and that to permit a regional district to be regulated by a part of that region was incompatible with the purpose for which it was created. *Des Plaines*, 63 Ill. 2d at 261, 347 N.E.2d at 719.

In *City of Evanston v. Regional Transportation Authority*, 202 Ill. App. 3d 265, 559 N.E.2d 899 (1990), the City of Evanston attempted to prevent the Regional Transportation Authority from building a bus facility within the city, relying upon a city zoning ordinance that prohibited bus storage or maintenance facilities without a special use permit. Relying upon *Des Plaines*, the appellate court held that application of the city's zoning ordinance to the regional bus facility was not within the city's grant of home rule power. The court observed that a similar incompatibility exists in allowing a part of a region to regulate a bus facility that is to serve the entire region and is operated by a regional governmental authority. *City of Evanston*, 202 Ill. App. 3d at 274, 559 N.E.2d at 905.

Similar results were reached in *Village of Swansea v. County of St. Clair*, 45 Ill. App. 3d 184, 359 N.E.2d 866 (1977) (holding that to require the county, which was statutorily mandated to carry out the terms of a state animal control act, to comply with municipal zoning ordinance would permit municipalities to frustrate the statutory program), and *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15, 344 N.E.2d 665 (1975) (holding that it was not within a city's home rule power to enact an ordinance requiring city approval for construction of a county road), and *Board of Trustees of the University of Illinois v. City of Chicago*, 317 Ill. App. 3d 569 (2000) (holding that the City of Chicago could not burden the university board of trustees with ordinances that would interfere with the state's constitutional mandate to operate a statewide educational system).

■ Here, a local government is attempting to force the State to obtain a special use permit before using its detention facility to house sexually violent persons pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)). This case is analogous to *Des Plaines* and *City of Evanston* in that it would be incongruous to allow a region of the State to regulate a State-owned and State-run facility used to house sexually violent persons from throughout Illinois. The housing, care and control of sexually violent persons is a statewide concern and does not pertain to the "government and affairs" of the City as a home rule unit. To allow the City to force the State to apply for a special use permit would frustrate the statutory program provided within the Commitment Act. Moreover, as in *Swansea*, the State is statutorily required to carry out the terms of the Commitment Act.

The City contends that the supreme court has retreated from the *Des Plaines* case, citing *Wilmette Park District v. Village of Wilmette*, 112 Ill. 2d 6, 490 N.E.2d 1282 (1986). This is not an accurate description of *Wilmette Park*. Within the decision, the supreme court cited *City of Des Plaines v. Metropolitan Sanitary District*, 48 Ill. 2d 11, 268 N.E.2d 428 (1971) (a pre-home-rule version of the *Des Plaines* case discussed above in which the court held that the sanitary district's taking of property pursuant to statutory power was not subject to the city's zoning restrictions), and *Swansea* and distinguished those cases on the basis that the narrow issue presented in *Wilmette Park* was whether a park district, in exercising its statutory function, was exempt from the zoning ordinance of its host municipality that did not prohibit the park district's use of the land in question but required a special use permit. *Wilmette Park*, 112 Ill. 2d at 15, 490 N.E.2d at 1286.

Unlike here, in *Wilmette Park*, the municipality could not

completely prevent the park district from complying with its duty to maintain the park via the special use permit. Rather, the permit allowed the municipality some control over the type of lights installed in the park by the park district. Another distinguishing factor is that *Wilmette Park* concerned two local governments with concurrent jurisdiction over the parks in the municipality. *Wilmette Park* did not concern the regulation of an entity like the State by one of its subparts. It is easier to discern how lighting in a park would concern the "government and affairs" of a home rule unit, whereas the housing of sexually violent persons from throughout the state does not.

Accordingly, we hold that the City of Joliet may not force the State to comply with a zoning ordinance when the State is carrying out a statutory duty encompassing a statewide concern, which in this instance is the housing of sexually violent persons. Having determined so, we need not address whether the doctrines of equitable estoppel and *laches* prevent the City from bringing this action, nor do we need to address whether the City has met the requirements necessary for the issuance of an injunction.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER and LYTTON, JJ., concur.